# P. M. BRUNER GRANITOID COMPANY, Respondent, v. GLENCOE LIME AND CEMENT COMPANY, Appellant.

### St. Louis Court of Appeals, December 31, 1912.

1. **EASEMENTS: Common Switch: Restraining Improper Use: Injunctions: Pleading: Uncontroverted Allegations.** In an action to enjoin the use of a common switch for purposes not contemplated by the agreement under which it was constructed, an allegation in the petition, that it was constructed by the respective grantors of plaintiff and defendant under an agreement that it was to be used exclusively and equally for their respective businesses located on certain lots, was a material allegation, and the effect of the failure of the answer to deny it was to admit it and make proof of it unnecessary, under section 1830, Revised Statutes 1909.

2. **PLEADING: Admissions: Uncontroverted Allegations.** Under section 1830, Revised Statutes 1909, it is not necessary to prove the truth of material allegations in the petition that are not controverted by the answer.

3. **EASEMENTS: Common Switch: Restraining Improper Use: Injunctions.** Where a common switch was laid by the owners of adjacent property, to be used exclusively and equally for their respective businesses carried on upon that property and no other, one of the owners had no right to use the switch for a business carried on upon additional land, inasmuch as such use cast an additional burden upon the easement; and injunction would lie to prevent such use.

4. ————: **Prescriptive Right: Essential Elements.** To establish a prescriptive right, it is necessary to prove a user for a period

at least equal to the Statute of Limitations in cases at law; that it was adverse; that it was under a claim of right; and that the owner had notice of it, of its character, and of the claim of right.

5. ———: ———: ———: Common Switch: Unauthorized Use by One Party: Presumptively Permissive. While the unexplained use of an easement for the prescriptive period will be presumed to have been adverse in some cases, this presumption does not obtain where the use is of such a character or the circumstances attending it are such as to show that it was a mere privilege, enjoyed by leave of the owner; and hence the use of a common switch, by one of the parties entitled to use it, for a purpose not contemplated by the agreement under which it was constructed, when in no way injurious to the easement of his co-owner, will be considered permissive and not adverse.

'Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

AFFIRMED AND REMANDED.

*Robert & Robert* for appellant.

(1) Even if the extension of the switch was not contemplated when laid, the defendant has used it for more than nineteen years and has thus acquired a prescriptive right to so use it. Anthony v. Kennard Bldg. Co., 188 Mo. 704; Boyce v. Railroad, 168 Mo. 583; Gerstner v. Payne, 160 Mo. App. 289; Graham v. Olson, 116 Mo. App. 272. (2) Plaintiff offered no evidence even tending to show that defendant was interfering with the use of the switch by defendant, hence the bill should have been dismissed, as was at first done by the court. (3) There is absolutely no evidence that there was an agreement that the use of the switch was to be exclusively for lots 8, 9, 10 and 11. The extension was built in 1891, eighteen years before this suit was brought, and at the time Bruner received his deed for lots 8 and 9.

*Alexander Young* for respondent.

(1) It is well established that courts in granting new trials have large discretionary powers, and especially when the weight of the evidence is involved. Gould v. St. John, 207 Mo. 631. The court, if it sees proper, may go outside the reasons assigned in a motion for a new trial, and it is not restricted to the causes enumerated in the statute. Trial judges have a very wide discretion to grant new trials in order to accomplish justice, and their orders will not be reversed unless an abuse of discretion plainly appears. Parker v. Britton, 133 Mo. App. 274. (2) Every material allegation of the petition not controverted by the answer . . . shall for the purposes of the action be taken as true. R. S., sec. 1830; Marshall v. Insurance Co., 43 Mo. 586; Barthalow v. Campbell, 56 Mo. 117; Wells v. Pike, 31 Mo. 590. (3) When owner of land uses the track, then use of it by others does not necessarily import adverse user under claim of right. Wood v. Reed, 30 N. Y. Sup. 113; Pillow v. Mayberry, 36 S. W. 1040; Piano & Organ Co. v. Forbes, 33 So. 183. (4) Where one has no title to the soil in a way which he uses in common with the owner, his user is presumptively permissive. Parker v. Mobile Electric Co., 55 So. 364; Anthony v. Building Co., 188 Mo. 724. If permissive in its inception, then such permissive character being stamped on the use at the outset will continue of the same nature and no adverse user can arise until a distinct and positive assertion of a right hostile to the owner, and brought home to him, can transform a subordinate and friendly holding into one of an opposite nature and exclusive and independent in its character. Pitzman v. Boyce, 111 Mo. 392; Hurt v. Adams, 86 Mo. App. 81; Vaughan v. Rupple, 69 Mo. App. 583.

NORTONI, J.—This is an appeal from an order of the court awarding plaintiff a new trial. Plain-

tiff's suit is for injunctive relief. A restraining order is sought against defendant, to the end of preventing it from using a common switch, in part upon plaintiff's property and in part upon defendant's property, for purposes which were not originally contemplated and which operates to impair the rights of plaintiff. After hearing the evidence, the court found the issue for defendant and dismissed the bill. However, it subsequently granted plaintiff a new trial for the reason that it erred in its conclusion that defendant was authorized to use the common switch for the purpose of reaching its property other than that contemplated in the original agreement between the parties with respect to establishing the switch. It is from this order, awarding the new trial to plaintiff, that defendant prosecutes the appeal.

It appears that about 1889 one Goetz was engaged in the line and cement business and Bruner in the granitoid business. Goetz and Bruner agreed to purchase four lots of ground in the city of St. Louis, which were adjacent, with a view of conducting the business of each on separate lots. In accordance with this agreement, they purchased lots 8, 9, 10 and 11 of a certain city block numbered 2211. By an arrangement between the parties, Bruner took title by deed to lots 8 and 9 and Goetz took title by deed to lots 10 and 11. By a further agreement, Bruner and Goetz constructed the switch involved here along the line between lot 9, which was owned by Bruner, and lot 10, which was owned by Goetz. Each party contributed pro rata to installing the switch along the line which divided their properties, and the major part thereof rested, one-half on Bruner's property and the other half on that of Goetz. The switch connected with the Missouri Pacific Railroad tracks. It was agreed and understood that the switch should be used in common by Bruner and Goetz in connection with their respective business conducted on the separate lots owned by each, and

it was so used thereafter. Bruner established his granitoid business upon his property, lots 8 and 9, and in connection therewith erected a stone crusher adjacent to the switch. Goetz established on his property, lots 10 and 11, his lime and cement business. Both parties used the common switch for the purpose of setting cars in and out in connection with the business of each. The business of each was not extensive at first and it appears that but about one car a day was sufficient to supply either. Two and a half years after the switch was thus constructed, Goetz extended it to the south and across the alley to connect with lots 22, 23, 24 and 25, which he occupied in connection with his business. The switch runs north and south. The four lots numbered 8, 9, 10 and 11, lying north of the alley, to which the switch was originally servient under the agreement, are about one hundred, sixty feet in length and, of course, the switch track on this property was about the same length, though there was a slight curve in it across one of the lots owned by Goetz. Subsequently the business of both of these parties was incorporated. The plaintiff here, an incorporated company, succeeded to the rights of Bruner and to the title to lots 8 and 9, while the defendant, Glencoe Lime & Cement Company, incorporated, succeeded to the rights of Goetz and to the title of lots 10 and 11. These two corporations, subsequently formed, succeeded as well to the rights pertaining to the use of the switch. Furthermore the defendant succeeded to the rights of Goetz as to so much of his business as was located on lots 22, 23, 24 and 25 south of the alley and to which the switch track had been extended by him in 1891.

It appears defendant's business has increased considerably during the period of time which elapsed, until, in recent years, it has employed the switch for setting in and out three or four cars per day. When defendant sets in or takes out cars over this switch

in connection with that part of its business located on lots 22, 23, 24 and 25 south of the alley, it becomes necessary for plaintiff to suspend its work and permit cars on the switch track adjacent to lot 9 occupied by it to be removed therefrom, in order that there may be a clear track for the shunting in or taking out of defendant's car beyond. From this it appears that plaintiff's business is frequently impeded and interfered with by the act of defendant's passing cars in and out over the common switch and upon its private property—lots 22, 23, 24 and 25 beyond the alley. It is because of this interference that the injunctive relief is sought, on the theory that the easement originally granted over a portion of plaintiff's lot through the laying, and pertaining to the use, of the common switch did not contemplate a service to defendant beyond the alley on other property, but instead contemplated only the accommodation of the business of the two parties on the four lots originally purchased—lots 8, 9, 10 and 11 north of the alley.

After hearing the evidence, the court dismissed the bill and gave judgment for defendant, as though plaintiff's business was not impaired and its rights were not infringed or interfered with through defendant's use of the switch for the purpose of setting in and taking out cars quite beyond the original property contemplated in the agreement pertaining to the common switch. But the court concluded, and we believe properly so, that it erred in respect of this matter, and thereafter set the judgment aside and ordered a new trial of the issue.

On this appeal from the order awarding a new trial, it is first argued by defendant that the record is devoid of evidence tending to prove that the switch was originally installed to serve the business of the parties located upon lots 8, 9, 10 and 11 only, and therefore plaintiff's suit must fail, for it is said, unless the agreement under which the switch was laid, restricted

its use as servient to the property of plaintiff's lots 8 and 9 and the property of defendant—lots 10 and 11—alone, it is clear that defendant was not imposing an additional burden upon plaintiff's property by employing the switch in carrying cars over it to its property south of the alley, which is lots 22, 23, 24 and 25. It is true there is no direct evidence to be found in the record touching this matter, but the question was not at issue under the pleadings, for the plaintiff set out this agreement in its petition in plain and concise words, and defendant did not deny it in the answer. The petition avers that the switch was originally laid under an agreement, in part upon the property of Bruner and in part upon the property of Goetz, along the line dividing Bruner's lot 9 from Goetz's lot 10, and that the cost of construction was borne equally and paid equally by each of said parties. In this connection, it is averred that, "It was agreed and understood between the said Charles W. Goetz and P. M. Bruner that the said switch should be built upon the said property as the said switch was afterward located and built, and that it should be used *exclusively and equally* for their business carried on upon said lots and no other." Here is an express averment, which is material to the issue, that the switch was laid by the parties as servient to the business carried on by the parties on lots 8, 9, 10 and 11, *and no other*. Besides this, it appears throughout the petition that such was the arrangement under which the common switch was constructed by the parties, and that the business on each of lots 8, 9, 10 and 11 was entitled to an equal use of the switch, but none other.

Defendant did not deny this averment in its answer in any manner whatever. There is no general denial in the answer, but, on the contrary, it specifically admits that plaintiff has the right to the use of the switch mentioned in the petition and denies only

that it ever interfered with the use of the switch by plaintiff or interfered with any rights of plaintiff in the switch, or that it has ever threatened to interfere therewith. This being true, the averment in the petition concerning the agreement under which the switch was laid is admitted, for the statute provides that every material allegation of the petition not controverted by the answer shall, for the purposes of the case, be taken as true. [See sec. 1830, R. S. 1909.] The averments of the petition touching this matter were material and, as they were not denied, are to be treated identically as though they were established by the evidence. It was unnecessary to introduce proof touching these matters which were admitted on the record, and it would have been superfluous to do so. [See Marshall v. Thames, etc. Ins. Co., 43 Mo. 586; State ex rel. v. Henderson, 86 Mo. App. 482, 488.] It must therefore be taken as conceded, and, indeed, the case does concede, that the switch was originally laid in 1889 under an agreement between the adjacent owners which constituted it a common switch for the use of the business of the two conducted on lots 8, 9, 10 and 11, and none other. By this oral agreement, an easement was established along the portion of lot 9 occupied by the switch, owned by plaintiff's predecessor in title, in favor of defendant and its predecessor in title, servient to lots 10 and 11 now owned by defendant. And an easement was likewise established in favor of plaintiff along that portion of lot 10 occupied by the switch, owned by defendant and its predecessor in title, servient to lots 8 and 9, owned by plaintiff and its predecessor in title. Beyond this the easement does not obtain, unless it has been acquired through prescription.

It appears that defendant's business has considerably increased in volume in recent years, and, therefore, instead of setting one car a day upon the switch, it now passes in and out as many as four. These cars

are principally passed over the switch as originally constructed beyond the alley over the extension constructed by Goetz in 1891 and upon lots 22, 23, 24 and 25. As it is necessary to pass all the cars to the lots beyond the alley over the switch as first constructed, this operates to impede and interfere with plaintiff's business. It is said that every time a car is passed by defendant over the track to the lots beyond the alley, plaintiff's car adjacent to its stone crusher on lots 8 and 9 must be moved out, in order to make the way clear. While this moving of cars is done, the work of plaintiff's plant must frequently suspend until the car, which its men are engaged in loading or unloading, is reset in position. No one can doubt that such an operation impedes and interferes with plaintiff's business, and furthermore it casts an additional burden upon plaintiff's estate, for, under the original agreement, its lots 8 and 9 were in no respect servient to lots 22, 23, 24 and 25 of defendant, which are located beyond the alley.

But it is said that, though such be true, it appears defendant has acquired a prescriptive right through the long years of user of the switch since the summer of 1891, in passing cars over the same and upon lots 22, 23, 24 and 25 beyond the alley. Defendant introduced no evidence whatever at the trial, and the prescriptive right from user must be found, if at all, in the evidence given for plaintiff. We discover nothing in the record to sustain this argument. In order to establish a prescriptive right there must appear, first, a user for a period at least equal to that of the Statute of Limitations in cases at law; second, that the user was adverse; third, that it was under a claim of right; and, fourth, notice to the owner of the user and of its character and of the claim of right. A mere permissive use will not suffice. [Anthony v. Kennard Bldg. Co., 188 Mo. 704, 87 S. W. 921.] There can be no doubt that defendant and its predecessor have used the

switch since 1891 for a purpose quite beyond that con-
templated by plaintiff's predecessor in title in the
original grant and that plaintiff and its predecessor
possessed full knowledge during all of the years touch-
ing the user, but there is naught in the case suggesting
this use was an adverse one. Indeed, all of the cir-
cumstances suggest the contrary. It is true that, where
the use of an easement has continued for the prescrip-
tive period unexplained, it will be presumed to have
been adverse in some cases; but this presumption does
not obtain if the use is of such a character or the cir-
cumstances attending it are such as to show that it was
a mere privilege enjoyed by leave of the owner. [See
22 Am. & Eng. Ency. Law (2 Ed.), 1202; Washburn's
Easements (4 Ed.), 156.]

If this were a case where defendant and its prede-
cessor used the switch for all those years and plaintiff
and its predecessor suffered it without making any
use of the switch on their own part, the presumption
would be highly influential here. However this may
be, it is of slight importance in the circumstances at-
tending the situation and the use, for it appears plain-
tiff and its predecessor used the switch all of the time
in connection with its business. The use of defendant
and its predecessor in passing cars over the switch
to the lots beyond the extent of the easement for many
years did not interfere with plaintiff's rights in the
least, and it was therefore but neighborly to permit
it. It appears to have been only recently that defend-
ant's business has expanded until the extra user or
burden imposed by it upon plaintiff's estate has be-
come of such proportions as to materially interfere
with its business. Because of this, it is sought to re-
voke the permit theretofore enjoyed. It seems to be
the generally accepted rule in cases such as this, where
both the owner and another use the way and it appears
that the use of the other person in no manner inter-
feres with that of the owner or injures the road, that

the courts will treat such use as permissive only and not sufficient, in the absence of a more positive and direct showing, to establish the claim of adverse user. On this question our own Supreme Court has recently said in Anthony v. Kennard, 188 Mo. 704, 724, 87 S. W. 921: ''But if the owner of the land opens a road across it for his own use and uses it and keeps it open for his own use, the fact that he sees his neighbor also making use of it, under circumstances that in no way injures the road or interferes with his own use of it, does not justify the inference that he is yielding ·to his neighbor's claim of right or that his neighbor is asserting any right; it signifies only that he is permitting his neighbor to use the road.'' It is said· in such cases the use of a way by others does not necessarily import adverse user under a claim of right and exclusive within the meaning of that term; but from the fact that it is kept open and used by the owner for his own purposes, it is to be inferred rather that the use by others is by his consent and permission. [See Wood v. Reed, 30 N. Y. Supp. 112.]

There is not a suggestion in the record that defendant or its predecessor in title ever asserted any adverse claim of right with respect to the use of this switch, and the entire proposition depends upon the mere fact that it was permitted to use it at a time when such use in no manner interfered with the rights of plaintiff or its predecessor who was all of the time using the switch in its own business as well. Obviously the presumption of adverse user may not arise amid facts and circumstances thus appearing, for such facts and circumstances attending the use are sufficiently strong to repel it, in that they suggest a mere permission.

The court did not err in awarding plaintiff a new trial. The judgment should be affirmed and the cause

remanded for further proceedings. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.