BUDD, *Plaintiff in Error*, v. COLLINS.

**Change of Possession from Friendly to Adverse;** PARTITION. Proceedings for the partition of land brought by persons holding possession under license from the true owner, and to which he is no party, followed by a sale to one of the petitioners, and continued exclusive possession by him will not give the possession an adverse character. In order to convert a friendly or subordinate into an adverse possession, in any case, the intention to make the change must be distinctly made known to the true owner.

*Error to Jackson Circuit Court.*—HON. SAM'L L. SAWYER, Judge.

9—69

*Azariah Budd, p. p.*

1.   The possession of the defendant was not adverse to the plaintiff's grantor.   He held subordinate to the State, under the act of January 23rd, 1829, and cannot claim the statutory bar.   2 Terr. Laws of Mo., 194; 1 Washb. Real Prop., (3 Ed.) 482; Tyler on Eject., 880; *Johnson v. Prewitt*, 32 Mo. 553; *Pease v. Lawson*, 33 Mo. 35 ; *Pentz v. Keuster*, 41 Mo. 447 ; *Jackson v. Stiles*, 1 Cow. 575 ; *Jackson v. Scissam*, 3 Johns. 498; *Luce v. Carley*, 24 Wend. 451.   The character of one's possession must be determined by the entry. *Quinn v. Quinn*, 27 Wis. 168.   The defendant is estopped of his plea.   His possession originated with H. C. Davis, who held as a tenant of the State.   The relation of landlord and tenant, when once established, attaches to all who succeed, however remote.   *Jackson v. Davis*, 5 Cow. 129 ; Tyler on Eject., 918, 919 ; 3 Washb. Real Prop., (3 Ed.) 110 ; 1 Greenl. Ev., §§ 189, 23, 25 ; *Chouquette v. Barada*, 23 Mo. 331.   Subordinate estates may be partitioned; Wag. Stat., § 1, p. 966.   And the sheriff's partition deed purports to convey, only, the right, title and interest of the parties to the partition suit.   As the estate in partition was subordinate, no adverse possession can be predicated of the title conveyed.   *Jackson v. Town*, 4 Cow. 602 ; *Jackson v. Graham*, 3 Caines 188.   But the defendant was in possession, under the State, as tenant in common with the other heirs of Michael Collins, before and at the time of his partition purchase.   He could not change that subordinate possession into an adverse one; nor while occupying and enjoying possession, under his lease, acquire and assert a title hostile to his landlord.   He must first surrender his possession, or disclaim his landlord's title, and give him notice thereof.   *Forder v. Davis*, 38 Mo. 107; *Tondro v. Cushman*, 5 Wis. 279 ; *Quinn v. Quinn*, 27 Wis. 168.   By the terms of the grant under which the defendant holds possession, his title was determined February 2nd, 1870, by an authorized sale of the land by the State to the

plaintiff. 2 Terr. Laws of Mo., 194, § 1. So, also, an estate at will is determined by the sale of the fee, by the landlord to a third party. 2 Black. Comm., 146.

2. But the defendant's possession did not originate under the limitation act of 1857. And if his possession was adverse, an action accrued to the State in 1853 ;.when the defendant and his co-tenants inclosed the land. And the plaintiff's action is saved. Laws of Mo. 1856 and 1857, p. 80, § 15 ; *Neilson v. Chariton Co.*, 60 Mo. 386. The defendant did not enter under his partition purchase. He was in possession before, and the character of his possession is determined by the entry. Smith's Land. & Ten., 218, note *a*; *Quinn v. Quinn*, 27 Wis. 168. The sheriff's partition deed related back and took effect from the day of sale ; especially as the defendant was already in possession. But the sale did not occur under the limitation act of 1857. *Jackson v. M'Call*, 3 Cow. 79.

3. The defendant did not disavow his tenancy, nor give notice of any adverse claim under the act of 1857. But if the inclosure of the land was constructive notice, even that occurred prior to the act of 1857.

*James K. Sheley* for defendant in error.

By the act of 1857 the statute of limitations was made to apply as well to the State as to individuals. Defendant went into possession in that year under color of title, for he held under a sheriff's deed in partition, and all the time claimed the same as his property, having the whole inclosed, cultivating and pasturing it. It is true that the State had never parted with the paper legal title, but held the same till 1869. Plaintiff claims from or under the State, and he can only have such rights as the State has. The State would be barred by the statute of limitations, and, therefore, the plaintiff must be.

2. The fact that Davis had settled on the land and sold his claim to William Collins, and that the land was

sold as the land of William Collins at the partition sale, does not make the defendant hold as tenant under the State. The act of January 23rd, 1829, establishes no such relation between the State and the person in possession as that of landlord and tenant. 2 Terr. Laws, p. 194. That act was simply a provision for persons to remain on the land until the Legislature should otherwise direct, upon condition that they should be liable for any damage. By the act of December 31st, 1830, (2 Terr. Laws, 210,) the Legislature did otherwise direct. By the provisions of this act it was made the duty of the Governor to cause all the seminary lands to be offered at public sale, and by the act of January, 29th, 1833, provision is made for the sale of the lands at private sale. 2 Terr. Laws, 358. The first act gives permission to remain until otherwise directed. Not the first principle of tenant and landlord is embraced in the act; it was simply an effort to prevent trespass. By permitting such persons to remain they would not be so apt to commit trespass or destroy the timber. In 1830, less than two years after the first act, they did otherwise direct. They severed the connection between occupants and the State, and ordered the land sold, not even recognizing pre-emption rights; all was ordered to be sold, and the person on the land was in no better condition than any other person, all were at liberty to bid. Then I conclude that the relation of landlord and tenant never existed, and even though it may have existed, the State severed it when the land was ordered to be sold. It never could be made to exist between defendant and the State; he went on the land long after the act ceased to exist. He had no connection with Davis, had the whole of it in actual possession, claiming the land as his. When he bought it he paid a full price. Was in fact innocent in all the transactions. Supposed he had a good title till speculators ascertained that it stood as State land on the books of the office. The State evidently received the money from William Collins for the land. The fact that two patents were issued by the

State to Collins for the same piece of land, goes strongly to prove this.

HENRY, J.—This was an action of ejectment in the circuit court of Jackson county to recover forty acres of land lying in said county, and was submitted for trial to the court, without a jury, on the following agreed facts: The land is seminary land, which was donated to the State of Missouri by the United States. On the 2nd day of February, 1870, plaintiff purchased it from the State, and received from the State a patent therefor; defendant is in possession of the land. Michael Collins, father of defendant, in the year 1834, took actual possession of said land, took wood from it and fenced a few acres on the south side, and used it for plow land, and continued in possession, claiming title from the State until his death in 1850. During all that time he exercised such acts of ownership over the land as farmers generally do, except that he usually omitted it from his assessment list, and seldom paid taxes on it. After his death his administrator and heirs continued in possession of said land, as of the other lands belonging to said estate. In the year 1853, defendant and the other heirs of said Collins, claiming title to said land by descent, fenced and inclosed the whole of said forty acres, and have continued to keep up the fence and have remained in possession. The heirs of said Collins, including defendant, petitioned the circuit court of Jackson county for partition of the land of said Collins, on which there was a judgment of partition and order of sale, and on said sale in partition defendant purchased this tract and received a sheriff's deed for the same, dated in September, 1857, and he has ever since been in possession, paying taxes, &c. Neither the State of Missouri nor the plaintiff herein was a party to that partition suit. In 1828 one H. C. Davis settled on the land in controversy, and continued to reside thereon until 1834, and made a small improvement thereon included in the lot afterwards inclosed by Michael Collins.

Davis claimed to hold a settler's right, which, in 1834, he sold to said Collins, who then took possession as above stated.

The court refused to declare the law to be that the statute of limitations did not apply to this action, and that upon the agreed statement of facts the possession of the defendant was not adverse, but gave the following declarations : *First*, If the court, sitting as a jury, find from the statement of facts agreed upon by the parties, that defendant, in the month of September, 1857, received from the sheriff of Jackson county a deed embracing the land in controversy ; and that on or before the 1st day of January, 1858, he took possession of the land in controversy, and had a part or all of it inclosed, and used the same as farmers usually do, by cutting and using the wood and timber growing thereon, or cultivating the whole or a part thereof ; or by using the whole or a part thereof for pasturage, and continued in such actual possession for ten consecutive years, all the time claiming the same as his property, then the verdict must be for defendant. *Second*, If the court believe from the said statement of facts that defendant, or those under whom he claims, was in the actual possession of the land in the year 1857, and has continued in the possession of the same ever since, during all said time exercising acts of ownership over the same, such as having the same inclosed, getting wood or timber on the same, and using the same for pasturage and cultivation, and all the time claiming the same as his property, then the verdict must be for the defendant.

Plaintiff then submitted to a non-suit with leave. His motion to set aside, afterwards filed, was overruled, and a judgment rendered against him, and the cause is here on a writ of error.

The seminary lands were granted to the State of Missouri by the United States in trust for the support of a seminary of learning. By an act of Congress approved March 3rd, 1831, the Legislature of the State of Missouri

was authorized to sell and convey, in fee simple, all or any part of the land which had been appropriated by Congress for the use of a seminary of learning in that State, and to invest the money in some productive fund, the proceeds to be forever applied to the use of such seminary, and for no other use or purpose whatsoever. Prior to the passage of this act of Congress, by an act of the General Assembly of this State, approved January 23rd, 1829, it was provided that "all persons who may reside on the lands in this State, appropriated for seminary purposes, are permitted, for and in consideration of improvements by them thereon heretofore made, to remain on and cultivate the same, until the Legislature of this State shall otherwise direct," &c. By an act of the General Assembly, passed in 1830, provision was made for the sale of the seminary lands; land offices were established, but no lands were to be sold, by the terms of the law, until the fall of 1831, before which time the act of Congress was passed, above referred to. By the act of the General Assembly of 1830, the said land offices, three in number, were to be kept open, respectively, twenty, ten and six days. The lands were not all sold at the expiration of the time, and in 1833 the General Assembly revived the act of 1830, and again offered for sale the seminary lands.

It is contended by plaintiff that the act of 1829, permitting settlers on seminary lands to remain there until otherwise directed by the State, created a fiduciary relation between the State and Davis, and that when Michael Collins, in 1834, purchased his improvements and possession, he held in the same manner, and that the possession afterwards held by Collins' heirs was the same possession, and could not be adverse to the State. On the other hand it is insisted for defendant that if any such relation existed the acts of the General Assembly of this State of 1830 and 1833, by providing for the sale of the seminary lands, severed the relation created by the act of 1829. Defendant further insists that defendant's adverse possession com-

menced in 1857, when he purchased the land in controversy at the sale in partition, and this seems to have been the view taken by the court below. These remarks are necessary to a proper understanding of the point made on the limitation act of 1857.

Prior to 1857 the statute of limitations did not run against the State. By the act of 1857 the State was expressly included in its provisions, but by section 15 it was enacted that " the provisions of this act shall not apply to causes of action commenced, or that have already accrued; but the same shall remain subject to the laws then in force." The only question for determination here, is when, if at all, defendant's adverse possession commenced? If not at all, or if prior to 24th day of February, 1857, the statute of limitations does not apply, and the judgment should be reversed. If after that date, the judgment is for the right party.

The possession of Davis from 1829 to 1834 was not adverse to the State, or if adverse, the possession of Michael Collins, in 1834, was also an adverse possession, since he purchased the possession and improvements of Davis. It is putting the case as favorably for defendant as the agreed facts will admit, to say that his possession was of the same character as that of Davis. If Davis' possession was adverse at any time between 1829 and 1834, then a right of action accrued to the State, and neither she nor one claiming under her is barred by the statute of limitations on the agreed facts. On the other hand, if Michael Collins was not in adverse possession in 1834, and from 1834 to the time of his death in 1850, neither were his heirs who merely inherited his interest in the land, and had the same kind of possession their ancestor had.

The defendant contends that the adverse possession commenced at the partition sale in 1857. It will be borne in mind that the defendant, and the other heirs of Michael Collins, were then in possession and had been ever since their father's death in 1850, and in 1853 had inclosed the

entire forty acre tract in controversy. The partition pro-
ceedings and the sale under them, did not effect a change
in the character of the possession. In *Pentz v. Kuester*, 41
Mo. 450, Holmes, J., observed of a partition sale : " It
was a sale by act of the parties themselves, as well as by
the judgment of the law, and not a sale *in invitum* like an
ordinary sheriff's sale under execution. The partition was
had upon the petition of this plaintiff; and the sheriff's
deed in partition must stand upon the same footing here
as if it had been a voluntary conveyance of the title by
the plaintiff himself. The purchaser will be considered as
his grantee, within the meaning of the statute." The case
at bar is distinguishable from that of *Hamilton v. Boggess*,
63 Mo. 233, in this, that that was a sale under an execu-
tion, and NAPTON, J., who delivered the opinion of the
court, said : " The relation of landlord and tenant be-
tween the son and the father never existed, nor was there any
agency except so far as the payment of taxes was con-
cerned, and this the father did, so far as we can see, without
any suggestion from the son, much less any formal invest-
ment of agency or authority to act for him." It is con-
ceded by defendant that prior to the partition sale there
was no adverse possession in defendant or his ancestor, and
the facts show that the heirs of Michael Collins, including
defendant, continued in possession as heirs of said Michael
from 1850 to the sale in partition, never having aban-
doned that possession, and after the partition sale there was
no change in the character of the possession, unless the
bare fact of purchase effected a change.

In the case of *Hamilton v. Boggess, supra,* Judge NAP-
TON remarks : " It seems clear from this and other author-
ities, that where title is claimed under an adverse pos-
session originally obtained through a fiduciary relation
existing between the tenant and owner of the land, the
change in the possession from a friendly to an adverse one,
must in some way be brought to the knowledge of the real
owner, and the books abound with nice distinctions in

regard to the kind of notice which is necessary to make the possession adverse." In *Quinn v. Quinn*, 27 Wis. 170, one Swain executed a bond to convey the land in dispute to James Quinn and Timothy McGrath, under which James Quinn entered, and continued in possession until his death. Prior to his death in 1864, he quit-claimed the premises to the defendant, who, upon his death, entered and retained possession. Before his quit-claim to defendant, Jas. Quinn and McGrath had released Swain from the covenants in the bond, and quit-claimed to him all their interest in the premises, and Swain, thereupon, conveyed to Maurice Quinn, who conveyed to the plaintiff. Defendant offered evidence of title derived by her from Pixley and McCarthy, and the court, Dixon, C. J., says "the possession of defendant is the same as that which the father had. His possession was that of a vendee under an executory contract for the purchase of the premises. It is the entry which decides the character and quality of the possession, and these remain unchanged until the possession has been actually surrendered, or until the tenant has avowed his intention not to hold in subordination to the title under which he entered, and given notice thereof to the party holding such title, or until an eviction in due form of law and possession taken or continued under a paramount title."

Neither the State nor the plaintiff here was a party to the partition proceeding. In that proceeding the heirs of Michael Collins were not in hostility to each other, or to the estate of their ancestor. They sought to partition what belonged to the estate. They set up no title other than that which Michael Collins and themselves had claimed since 1834. After the purchase defendant was in possession of the land in controversy, just as he had been since 1850, for the possession of each of the heirs was the possession of all, where neither disputed the right of any other. There was nothing in the possession of defendant, after the purchase at the sale in partition, to notify the

State that defendant was holding it otherwise than he and his ancestor had been holding it for nearly a quarter of a century. If the partition proceedings and sale are to be held sufficient to convert a friendly into an adverse possession, then we insist that the inclosure of the land in 1853 by the heirs, under a claim of title, was a more decided disclaimer of holding under the State, and an act more likely to give notice to the State that the occupants were holding and claiming adversely to her. There was nothing whatever to apprise any one without notice of the proceedings in the partition case of a change in the character of the possession after the partition sale. Defendant did not "take possession of the land" after said sale, and the use of that expression in the instruction is not warranted by the facts agreed upon. He simply continued in possession, having been, in connection with his co-heirs, in possession of the land since 1850. His being in sole possession, after the partition sale, was not a circumstance which would apprise any one of a change in the manner of holding, who was ignorant of the partition proceeding, since the possession of one tenant in common is the possession of his co-tenants, and something more than sole occupancy is necessary to convert it into an adverse holding against the co-tenants.

"In all cases where a party is in possession of land in privity with the rightful owner, nothing short of an open and explicit disavowal and disclaimer of a holding under that title, and assertion of title in himself brought home to the owner, will satisfy the law." Tyler on Eject., p. 876. "When a fiduciary relation exists between the possessor and the owner, a clear, positive and continued disclaimer and disavowal of the title, and assertion of an adverse right, and to be brought home to the party, are indispensable before any foundation can be laid for the operation of the statute of limitations. Otherwise the grossest injustice might be practiced; for without such notice the owner of the land might well rely upon the fidu-

ciary relations under which the possession was originally taken and held, and upon the subordinate character of the possession as the legal result of those relations." Ib., 877. " It is well settled, by the cases, that a tenant cannot, while occupying and enjoying the premises under his lease, originate a possession hostile or adverse to his landlord." Ib., 880. In *Luce v. Carley*, 24 Wend. 453, Smith had parol license to extend his dam to the shore opposite his own land, owned by the party who gave the license. Afterwards Smith sold his property, and the purchaser subsequently claimed to hold adversely to the party who had given the license. The Supreme Court of New York held, Cowen, J., that " the court below could not do otherwise than hold the Smiths bound by that arrangement. They did not put it too strong to the jury when they said that any claim of title by the Smiths, after thus coming in conventionally under Wood, could not raise an adverse possession as against him, or any person claiming under him. We think that the court were bound to regard the successors of the Smiths as in the same case with them, whether such successors came in with or without notice of the arrangement." In *Jackson v. Harsen*, 7 Conn. 323, it is said by the court that " the law seems to be well settled that when the relation of landlord and tenant is established, it attaches to all who may succeed to the possession through or under the tenant, either immediately or remotely. When a tenancy exists, a purchaser who enters under an absolute conveyance in fee from the tenant, is considered as entering as the tenant of the lessor, although he may not have known that his grantor held or derived possession from the lessor.

In the light of these authorities, and many others that might be cited to the same effect, we think there can be no doubt that the possession of defendant is to be regarded as the same possession his father had. There is nothing to show an adverse possession but the partition proceedings, sale and continued possession after the sale, and we are

satisfied that these did not work such a change in the possession as is demanded by the well established principles of law to convert into an adverse what was before a friendly possession. If a stranger had purchased this land at the partition sale and taken possession, there would have been plausibility in the position that it was the beginning of an adverse possession, although many respectable authorities hold otherwise, but to say that the heirs in a partition suit, to which they alone are parties, can, on the sale in partition, by buying the land and nothing more, originate in themselves an adverse possession to the landlord of the ancestor, although a purchaser from the ancestor by deed in fee simple, ignorant of the relation between him and the true owner would not be considered as holding adversely, is a proposition to which we cannot give our consent. This may be, probably is, what may be termed a hard case, but well established principles of law cannot, with safety, be ignored because their application in the given case may work a hardship ; and in the case at bar the defense of the statute is invoked against the recovery of land sacredly devoted to educational purposes, by an act of Congress, and if applicable at all, the circumstances demand that the defendant should make out a clear case of adverse possession.

If there was an adverse possession when the act of 1857 was passed, by the terms of the act it was a case excepted from the operation of the statute, and in any view to be taken of the case, the statute could not be pleaded against the State or a purchaser from the State. Judgment reversed and cause remanded. NORTON, J., not sitting.

On motion for rehearing NAPTON and NORTON, JJ., dissent.

REVERSED.