GEORGE W. ANSON, Appellant, v. PAUL F. TIETZE and MAUDE COLE TIETZE, his wife, T. D. WOODWARD, LEWIS ARVIEUX and LUCY ARVIEUX, his wife, J. W. LEE, CARRIE WHITNEY, a widow, SHERMAN WILSON and DOVY BRIDGEWATER WILSON, his wife, CROWN HILL CEMETERY ASSOCIATION, CLYDE HEYNEN, President, and the City of Sedalia, Missouri, a Municipal Corporation.—No. 39468.— 190 S. W. (2d) 193.

Division Two, November 5, 1945.

*George W. Anson* for appellant.

*D. S. Lamm* and *Henry C. Salveter* for respondents.

BOHLING, C.—Action to quiet title, the land involved being situate within the corporate boundaries of the City of Sedalia and portions of a tract known as the George R. Smith college property. The City of Sedalia and certain individual defendants claim title by adverse possession to separate roadways over the land. A principal issue turns on Sec. 1011, R. S. 1939, reading: "Nothing contained in any statute of limitation shall extend to any lands given, granted, sequestered or appropriated to any public, pious or charitable use . . ." Plaintiff contended the land had been devoted to a "pious use" up to 1943, when he received his deed. Defendants, among

other things, contended, if ever there had been a pious use of the lands, that such use long since had been abandoned and the statute of limitation started to run upon such abandonment. Plaintiff also contends the individual defendants established nothing more in law than a permissive user of the land. The trial court found for the defendants. We think the judgment should be affirmed as to defendant City of Sedalia but reversed and remanded as to the individual defendants.

Plaintiff's petition is in conventional form. Defendant City's answer asserted title by adverse user to a strip used for roadway purposes on the east side of plaintiff's land, asking a judgment quieting its title. Plaintiff's reply set up the nonapplicability of any statute of limitation on the theory the land was devoted to a ''religious, pious and educational'' use and also on the theory there was no agreement establishing the true boundary line between the lands but each owner mistakenly believed the fence to be the true line; and also pleaded that if the statute of limitation was ever set in motion, it was tolled when the land was devoted to a ''pious'' use. Paul F. Tietze and Maude Cole Tietze, ▉ his wife, Lewis Arvieux and Lucy Arvieux, his wife, and J. W. Lee filed joint and several answers in which they asserted a right in themselves and the public to a 20 foot roadway by adverse user for more than 31 years, describing the roadway in general terms.

The case was tried to the court. Plaintiff requested five declarations of law. The court gave one and refused the others. The court found plantiff the owner of the land excepting the strip claimed by the City of Sedalia and excepting, also, the easement roadway as alleged by defendants Tietze, Lee and Arvieux. Plaintiff appealed.

*The City's case.* The City questioned the sufficiency of plaintiff's brief in certain respects but at the argument asked that its claim be ruled on the merits. Plaintiff and defendant City of Sedalia own abutting tracts of land in the south quarter of Section 34, Township 46, Range 21, Pettis county, Missouri. The north and south center section line is the dividing line between the lands, plaintiff's land lying to the west and the City's land lying to the east of said north-south line. The City asserted title by adverse possession to a strip of land approximately 11 feet wide at the north and 10 feet wide at the south end by 625 feet north and south immediately west of said north-south section center line between the two tracts of land. The common source of title is Martha E. Smith and Sarah E. Cotton. The City purchased its land November 4, 1879; it being now a part of the City cemetery, known as Crown Hill cemetery.

As we shall rule the applicability of Sec. 1011, supra, on the issue of an abandonment of a use of the land within said section and shall assume, without determining, for the purposes of the case the applicability of said section up to the time of abandonment, we need

sketch only certain facts, which otherwise might well be detailed, connected with plaintiff's claim of title.

On September 17, 1888, Martha E. Smith and Sarah E. Cotton gave a bond for a "donation or gift" of land, including the land here involved, to the "Freedman's Aid and Southern Educational Society of the Methodist Episcopal Church," an Ohio corporation, in the event said beneficiary erected thereon by January 1, 1892, and paid for a building or buildings, costing $25,000, suitable for college purposes. The parties expressly recognized said gift to be one for charity, public good and educational purposes, with a reversionary interest effective upon a cessation of the use of the buildings and real estate for educational purposes. The time for the erection of the building or buildings was thereafter extended to January 1, 1894. The grantors conveyed the land to the beneficiary by deed dated March 21, 1895, the proviso or condition therein corresponded to that in the bond for the deed. The name of the grantee was changed to "The Freeman's Aid Society of the Methodist Episcopal Church." A deed was executed and delivered on August 17, 1917, vesting said grantee with the fee simple title to said real estate; the stated purpose of the deed was to free the title of the reversion and all other conditions and restrictions theretofore existing. Thereafter, the name of the beneficiary was again changed; this time to "Board of Education for Negroes of the Methodist Episcopal Church," an Ohio corporation, from which plaintiff received his deed, dated January 16, 1943, and recorded April 21, 1943.

The court adjudged the strip to defendant City upon findings that the City at all times, since *1879*, had been in the adverse possession of said strip of land under claim of absolute ownership and using the same for road purposes in connection with its municipal cemetery, making and maintaining valuable and permanent improvements thereon; including a substantial fence marking the boundaries of the City's claim; and that, if said strip ever had been devoted to a pious or charitable use, such user had been abandoned and the City had acquired title thereto by adverse possession for the period of limitation.

 There is no call to review, on the issue of its substantiveness, the evidence on behalf of the City tending to establish its ownership by adverse possession of the land in controversy between it and plaintiff, if ownership might thus be acquired. The overwhelming preponderance of the evidence established the City's adverse user for 40 years or more; the fencing and improvement of the strip involved for road purposes as adjudged and the exclusion of plaintiff and those under whom he claims from exercising any rights of ownership thereover.

 If the City's adverse possession started in 1879 or antedated the "public, pious or charitable use" of the land then, under

the adjudications of this court, Sec. 1011 affords plaintiff no ground for relief, not being applicable; because an adverse possession once attaching and continuing is not tolled by a subsequent user within said statute. Connecticut Mut. Life Ins. Co. v. City of St. Louis, 98 Mo. 422, 11 S. W. 969; McGrath v. City of Nevada, 188 Mo. 102, 108, 86 S. W. 236, 237. However, counsel has not directed us to any substantive evidence of record establishing such facts and they, if of record, have inadvertently escaped our attention.

■ Plaintiff says the ''true line'' was not known; that there was no agreement constituting the fence the true line; and that a fence ''placed on the supposed line will not invest title in land wrongly enclosed.'' One of plaintiff's difficulties here is: The City's claim of ownership extended to and included the fence, irrespective of where the true line, agreed to or not agreed to, might be. After the City made its prima facie case of adverse possession, it devolved upon plaintiff to come forward with evidence that the City claimed to an agreed line, the fence, only on condition the fence was on the true-line; that is, that the City's possession was not adverse. Tillman v. Hutcherson, 348 Mo. 473, 482[5], 154 S. W. 2d 104, 109[11, 13]. We find, as plaintiff's contention affirms, no probative evidence of any agreement establishing the fence as the true-line. ''The rule is that while one's occupancy of an adjoining proprietor's land under a mistake as to the boundary line, and without any intention of claiming beyond the true boundary line, when ascertained, is not adverse possession, yet if he takes and holds possession up to a given point, and claims to be the owner to such point, his possession is adverse, notwithstanding his belief that such point is the true boundary line, when in fact it is not.'' Brown v. Wilson (Banc), 348 Mo. 658, 666[8], 155 S. W. 2d 176, 180[10, 11]. ''If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse.'' Tillman v. Hutcherson, 348 Mo. 473, 482, 154 S. W. 2d 104, 109.

■ With respect to the applicability of Sec. 1011, quoted supra: Assuming, without determining, its applicability at one time, our discussion is limited to the issue of an abandonment of plaintiff's claimed ''pious'' use of the land and the subsequent acquisition of title by adverse user. The college building burned in 1925; and the City (denying that the land was ever devoted to a use within Sec. 1011) says that the ''pious'' use, if any, of the land was thereupon abandoned; and that such abandonment continued to date.

Our cases recognize that the use of land within the provisions of Sec. 1011 may be abandoned. St. Louis-S. F. Ry. Co. v. King, 329 Mo. 1203, 1215, 50 S. W. 2d 94, 99[11]; and, among others, cases infra. Abandonment is a question of fact, being a mixed question of intention and act—the intention to abandon permanently and the physical act of nonuser—which is here limited to the abandonment of

a pious user, claimed by plaintiff below. What was said by Holmes, J., in the early case of Clark v. Hammerle, 36 Mo. 620, 639, on the proof of abandonment is in accord and, notwithstanding the issue differed in that an abandonment of land under Spanish law was involved, remains opportune on the instant issue. In accord: Strother v. Barrow, 246 Mo. 241, 250, 151 S. W. 960, 963[5]; Pocoke v. Peterson, 256 Mo. 501, 516(b), 165 S. W. 1017, 1021(b); Roanoke Inv. Co. v. Kansas City & S. E. Ry. Co., 108 Mo. 50, 61-66, 17 S. W. 1000, 1003-1004; Missouri Pac. Ry. Co. v. Bradbury, 106 Mo. App. 450, 455, 79 S. W. 966, 967; Enno-Sander Mineral Water Co. v. Fishman, 127 Mo. App. 207, 211, 104 S. W. 1156, 1157; Campbell v. Kansas City, 102 Mo. 326, 348(IV), 13 S. W. 897, 901(4), 10 L. R. A. 593; Norton v. Duluth Transfer Ry. Co., 129 Minn. 126, 151 N. W. 907, Ann. Cas. 1916E, 760, 762(2); Annotations to Phy v. Hatfield (122 Tenn. 694, 126 S. W. 105), 135 Am. St. Rep. 888, 889, 19 Ann. Cas. 374, 375; Atlanta, K. & N. Ry. Co. v. Southern Ry. Co., 153 Fed. 122, 11 Ann. Cas. 766, 769; New York, N. H. & H. Rd. Co. v. Cella, 88 Conn. 515, 91 Atl. 972, Ann. Cas. 1917D, 590, 595; Fruit Growers' D. & R. Co. v. Donald (Colo.), 41 Pac. 2d 516, 98 A. L. R. 1288, 1291, supplementing earlier annotations there referred to; 1 C. J. S. 15, Sec. 7; 14 C. J. S. 534, n. 42; 28 C. J. S. 722, Secs. 58-60; 1 Am. Jur. p. 6, III; 17 Am. Jur. 1026, Secs. 142-144.

█ Section 1011 protects the owner of lands devoted to a "public, pious or charitable" use against others acquiring title by adverse possession; a privilege not enjoyed in the ownership of lands generally. The privilege is restricted to lands within the specified uses. The issue is not █ concerned with the corporeal thing, the land; but with the incorporated privilege, a specified use of land. In the vast majority of the cases called to our attention the issue has been so interwoven with the land that an abandonment of the use involved the nonuser of the land. The instant case does not involve any contention that the land was not used; the contention being restricted to an abandonment of plaintiff's claimed pious use of the land. To prevail, it devolved upon defendant City to establish an abandonment of the pious use and in addition a title in itself by adverse possession. We have heretofore pointed out that a preponderance of the evidence established the adverse possession. There is no worth-while dispute of the facts on abandonment. A building had been erected on the property for the education of negroes. It was totally destroyed by fire in 1925, and never was reconstructed. Since that time the land has been used for general farming purposes. We have observed that while Sec. 1011 applies to property held by counties strictly for public purposes, the use there under consideration, it has no application to property held by counties in their private character. Dunklin County v. Chouteau, 120 Mo. 577, 595, 25 S. W. 553, 557, then Sec. 6772, R. S. 1889. Plaintiff instituted this action on August 22, 1944,

following his purchase, approximately 19 years after the destruction of the only building on the land. This clearly established a nonpious user for more than 10 years. Mere nondevotion to a use, while a fact for consideration, will not necessarily constitute the abandonment of that use. The intention to abandon must accompany the nondevotion to the use. This intention may be established by expressed declaration or by acts and conduct consistent with an intention to abandon. Conduct raising an issue of an intent to abandon is not destroyed by that person's sworn testimony he did not intend to abandon. His testimony and his acts and conduct are evidentiary only, presenting a fact issue, and neither is conclusive over the other. Abandonment, so far as resting upon the element of intention, operates instanter. The ownership of land, as well as the right of easement over the land of another, is considered beneficial. For this among other reasons there is no presumption of an abandonment of such assets. A specific use imposed on the ownership of a given tract of land occupies an essentially different status. It is a restriction on the right of ownership; and insofar as the use imposed impinges on the freedom of full ownership it detracts from rather than enhances the value of the land, becomes a burden on the ownership, a liability instead of an asset, and to that extent makes the property onerous property. So, in the instant case, the continued pious user of the land, the making of the required capital improvements and the outlook of such user over future years might well have been considered too burdensome following the fire of 1925, and led to and culminated in its sale to plaintiff. There was ample evidence in the record to sustain the finding nisi that the use of the land within Sec. 1011, if theretofore existing, was abandoned after the fire of 1925; and subsequent to such abandonment the City acquired title to the strip involved by adverse possession.

*The case of the other defendants.* Defendant Maude C. Tietze, wife of defendant Paul F. Tietze, holds title to a city lot abutting 51 feet, and extending 120 feet north, on Saline street in the City of Sedalia; and defendant Alice S. Lee, wife of defendant J. W. Lee, holds title to two city lots lying immediately east of the Tietze lot; and defendants Lewis Arvieux and Lucy Arvieux, husband and wife, hold title to three lots lying immediately east of the Lee lots. The land described in plaintiff's petition abuts and forms the boundary of said Tietze lot on the west and abuts and forms the boundary of said Tietze, Lee and Arvieux lots on the north. The court found that the named defendants, their predecessors in title and the public generally had "used and enjoyed a well defined passageway" 20 feet in width beginning in the north line of Saline street and extending north adjacent to and parallel with the west boundary line of the Tietze lot and for a distance of 20 feet north of the north boundary line (if extended west) of said lot and thence eastwardly a distance

of 273 feet "over a well defined passageway 20 feet in width adjacent to and parallel with the north boundary" lines of said Tietze, Lee and Arvieux lots; that said user had been "open and notorious," "hostile and adverse and" without license or agreement for more than 31 years, and that said defendants and the public generally had acquired a prescriptive right to use said passageway. The court adjudged accordingly. Although plaintiff vigorously attacks this judgment, the named defendants have filed no brief in this court.

Plaintiff, as in the appeal involving the land claimed by the City of Sedalia, asserts error on the same issues respecting the application of Sec. 1011, supra. We adhere to our holdings hereinbefore made thereon; the identical facts being involved.

 Plaintiff attacks the judgment in favor of the named defendants on an additional ground; viz.: Said defendants failed to adduce substantial probative evidence to establish an adverse user of plaintiff's land, their case made going no further than the establishment of a permissive user, which is insufficient. Pitzman v. Boyce, 111 Mo. 387, 392, 19 S. W. 1104, 1105, 33 Am. St. Rep. 536; Budd v. Collins, 69 Mo. 129, 138. The issue gave us some concern; because we failed to find it presented to the trial court for determination. This is matter of procedure; applying to the remedy. It is well settled that when a new statute as to procedure goes into effect before the final decision of a case it governs and regulates matters of procedure therein subsequent to its effective date. Clark v. Railroad, 219 Mo. 524, 532(1), 118 S. W. 40, 43(1); State ex rel. Midwest P. & S. Co. v. Haid (Banc), 330 Mo. 1093, 1100(II), 52 S. W. 2d 183, 186[3-5]. In State ex rel. Northwestern Mut. L. Ins. Co. v. Bland, 354 Mo. 391, 189 S. W. (2d) 542, handed down September 4, 1945, court en banc held that the provision of the Constitution of 1945 (effective March 30, 1945), authorizing the court to determine finally all cases up on certiorari from the courts of appeals the same as on original appeal—on the merits—was applicable to a writ of certiorari to a court of appeals issued on January 2, 1945, under the Constitution of 1875 (Amend. 1884, Art. VI), which limited the review to a consideration of conflicts in rulings. Court en Banc reviewed that case on the merits and not for conflicts in rulings. The instant case was tried to the court, sitting as a jury, in November, 1944. It was taken under advisement and judgment was entered December 27, 1944. Plaintiff's motion for new trial was filed December 29, 1944, and was overruled on February 10, 1945. The new General Code for Civil Procedure became effective January 1, 1945. Section 114, Subsec. (d), of said Code provides: ". . . The question of the sufficiency of the evidence supporting the judgment may be raised whether or not the question was raised in the trial court. The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature." We conclude plaintiff's point is for review, it

going to the sufficiency of the evidence in behalf of the named defendants. See also Laws 1943, p. 357, Sec. 3, Code for Civil Procedure. Hetzler v. Millard, 348 Mo. 198, 211, 153 S. W. 2d 355, 359[3]; Wright v. Brown (Mo.), 177 S. W. 2d 506, 511[6] ruled prior to the new code, are in harmony.

Mrs. Tietze, the owner of the lot along the west side of which the passageway leaves Saline street, testified that the only time she or the others ever used the passageway was when they "got the coal and kindling"; that she "supposed it was open for our use"; that one time a city alderman told her they had a 12 foot alley. Her husband testified that it was a driveway through there to put coal in the sheds; that he and his wife did not own the driveway, thought the City owned it; that they claimed only what their deed called for, and that this driveway had been there for years and they had "a right to have it left open."

Mrs. Lee testified that the driveway had been used for 38 years; that she considered it an alley; that she claimed to own only the land her deed called for and the "right to have this driveway maintained to get to the coal shed"; that the public would use it when they wanted to go back there; that they would go up to the college that way sometimes, and that the land was farmed and a man lived back there.

The Arvieuxs had recently purchased the property. They knew little of value on the issue. For instance: Mr. Arvieux testified his grantor informed him he had fenced the alley "because it growed up in weeds . . . and he put in a garden to keep the weeds down." This fence had been erected about 4 years before the trial. Mrs. Lee also had fenced in part of the passageway back of her lots a year or so before the trial to keep plaintiff's stock "out of her garden."

The showing made by the named defendants is, as plaintiff contends, consistent with a permissive user and falls short of establishing an adverse user of plaintiff's (we use the term to include plaintiff's predecessors in title) land; considering defendants ▮ had the burden to establish their adverse user.

It is stated in 39 C. J. S., p. 942, Tit. Highways: ". . . the use of vacant, unenclosed, and unoccupied land for a highway will be presumed to have been by permission and not adverse . . . Also, there is authority for the propositions that . . . user will be presumed to have been permissive in a case of doubt or uncertainty as to its character . . .; there is no presumption that use of land as a way by the public was without the permission of the owner; no presumption of an adverse claim is raised by the mere use of land for the purpose of a road; no presumption of adverse use arises merely from using what is open to use . . .; and that where the original use was permissive, there is no presumption that continued use or possession was under an adverse claim." Consult also 28 C. J. S., p. 673,

nn. 88, 89, Tit. Easements; 1 Elliott, Roads and Streets, 4th Ed. p. 236, n. 22, 25 Am. Jur., p. 365, Tit. Highways, Sec. 47.

The named defendants pleaded they and the public had acquired the right to use the passageway by adverse possession for more than 31 years. They claimed no right in themselves that was not subordinate to the rights of the public. There is no showing of any public moneys spent on the passageway or any work done thereon by the City or any public authority or by the defendants. The City, although a litigant in the case and vigorously asserting the rights of the public to a roadway a short distance away, made no claim on behalf of the public to this passageway. Defendants fencing of portions of the passageway curtailed the right of the user they asserted existed in the public. Mrs. Lee, when asked its width testified: "I wouldn't know; there was no fence there; always drove up and used it." There was no testimony establishing a 20 foot width, as adjudged. The record does not indicate how this passageway had its inception. The land was open and unfenced. Anyone who wanted to go over the land to the college or the cemetery could go through there. The fences erected by certain defendants left this passageway outside of the enclosure, open and unfenced on plaintiff's side, until a few years ago and short of any limitation period, some of the defendants started fencing the passageway. Until these fences encroached upon plaintiff's land, there was nothing established of record to apprize plaintiff that defendants' use was exclusive of and hostile to any rights of his ownership. He had, so far as shown, as much visible possession of the passageway as they. The tenant on the place made use of it. His stock were free to and did pass over the passageway. Defendants make out a case of good neighborly conduct to pass over plaintiff's land, amounting to a mere license revokable at pleasure.

"It takes more than a continuous use to make a road a public highway by user. There must be an *adverse* use for the statutory period and this must be continuous and exclusive." State v. Hood, 143 Mo. App. 313, 317, 126 S. W. 992, 994. Coberly v. Butler, 63 Mo. App. 556.

"The law requires adverse possession to be open and notorious in order to notify the real owner of the posession and claim of disseizin. . . . It is not the mere occupancy or possession of land which must be known to the true owner in order to prejudice his rights, but its adverse character.

" 'The law . . . presumes that every possession is rightful, and consistent with, not in opposition or "adverse" to, title and ownership. A party, therefore, who relies upon "adverse possession", . . . must prove his possession to be "adverse" to the title set up . . . ; that is, he must show the actual knowledge of the real owner that he claims in opposition to, and defiance of, his title, or he must show such occupancy and user, so open and notorious and incon-

564

sistent with, as well as injurious to, the rights of the true owner, that the law will authorize from such facts the presumption of such knowledge by the true owner.' '' Burnside v. Doolittle, 324 Mo. 722, 731, 24 S. W. 2d 1011, 1016[5].

The instant case is like Kelsey v. City of Shrewsbury, 335 Mo. 78, 71 S. W. 2d 730, in many respects. There the city asserted title by adverse user to a passageway that had been in use by the general public for 25 to 30 years across plaintiff's unenclosed lot, using the passageway whenever convenient. Plaintiff, at times, improved the passageway for the convenience of the public. A judgment in favor of the city was reversed for failure to establish the adverse character of the user. To sum up the instant evidence: Plaintiff's land was unenclosed and defendants and other citizens, including plaintiff, made use of it as a passageway when it was convenient to ▮ do so. Plaintiff also had the use of it. This falls short of raising a presumption that defendants' use was an adverse user. See also Fiorella v. Jones (Mo.), 259 S. W. 782; 39 C. J. S., Highways, p. 928, Secs. 9, 11; Sprow v. Boston & A. Rd. Co., 163 Mass. 330, 39 N. E. 1024; Bullukian v. Town of Franklin, 248 Mass. 151, 142 N. E. 804. This permissive character of defendants' user continued and an adverse user did not arise until there was a distinct and positive assertion of a hostile holding made known, actually or inferentially, to the owner. Pitzman v. Boyce, 111 Mo. 387, 392, 19 S. W. 1104, 1105, 33 Am. St. Rep. 536; Budd v. Collins, 69 Mo. 129, 138.

Defendants T. D. Woodward, Carrie Whitney, Sherman Wilson, Dovy B. Wilson and Crown Hill Cemetery Association, Clyde Heynen, President, have on the record made, no right, title or interest in and to the land described in plaintiff's petition.

The judgment is reversed and the cause remanded with the following directions: The judgment in favor of the City of Sedalia is to stand but is not to be based upon any finding of an adverse user starting in 1879. The other defendants are to be found and adjudged to have no right, title or interest in and to the land and, subject to the rights of the City of Sedalia, plaintiff is to be found and adjudged the owner of the land. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.