Alma MILLER, Respondent,

v.

T. A. BERRY and Arve Berry, Appellants.

No. 7227.

Springfield Court of Appeals.

Missouri.

Aug. 7, 1954.

Rehearing Denied Sept. 7, 1954.

Lawrence E. Scruggs, Malden, Mo., Bradley & Noble, Kennett, Mo., for defendants-appellants.

Riddle & Baker, Malden, Mo., for plaintiff-respondent.

STONE, Judge.

This is an action by plaintiff to enjoin obstruction of a private road across defendants' land. Defendants appeal from a decree granting the requested injunctive relief.

Plaintiff owns a tract of 40 acres (NE¼ SE¼ of Section 13, Township 22N, Range 9E in Dunklin County, Missouri), which plaintiff and her husband, Marshall Miller, who died in 1946, acquired in 1932 as tenants by the entirety. Defendants own a tract of 40 acres (SE¼ SE¼ of Section 13, Township 22N, Range 9E), onto which they moved as tenants during February, 1941, and which they acquired by purchase during October, 1948. Plaintiff's tract (hereinafter called the Miller tract) adjoins defendants' tract (hereinafter called the Berry tract) on the north. The roadway in dispute (hereinafter referred to as the claimed roadway) runs in a general northerly and southerly direction between the house in the southwest part of the Miller tract and the south side of the Berry tract. There are two gates across the claimed roadway, one where it passes through a fence on the north boundary line of the Berry tract, and one where it passes through another fence near the south boundary line of the Berry tract and connects with a road running in a general easterly direction to Malden, Missouri.

Plaintiff asserts a prescriptive right (denied by defendants) to use the claimed roadway, predicated on the contention, as stated in her petition, "that the plaintiff and those under whom she claims have been in actual, adverse, continuous, hostile, open and notorious use of said roadway under claim of right for a period of more than 10 years" prior to obstruction of the roadway by defendants on December 9, 1951. The determinative issue upon this appeal is as to whether plaintiff's use of the claimed roadway has been permissive or adverse, and thus whether plaintiff has used the road under license revocable at the will of defendants or adversely so that her use has ripened into a perscriptive right.

■ Since plaintiff seeks only to enjoin obstruction of the claimed roadway, this court has appellate jurisdiction. Burnett v. Sladek, Mo.App., 251 S.W.2d 397, 398; Smith v. Santarelli, 355 Mo. 1047, 199 S.W.2d 411; Chapman v. Schearf, 360 Mo. 551, 229 S.W.2d 552. It is our duty upon appeal to try the case de novo; and, although we accord due deference to the findings of the trial chancellor [Marshall v. Callahan, Mo.App., 229 S.W.2d 730, 732(1)], we must accept the responsibility of weighing the evidence and reaching our own conclusions, [Ash Grove Lime & Portland Cement Co. v. White, 361 Mo. 1111, 238 S.W.2d 368, 370(1); Oliver L. Taetz, Inc. v. Groff, 363 Mo. 825, 253 S.W.2d 824, 828 (1); Faire v. Burke, 363 Mo. 562, 252 S.W. 2d 289, 290(1); Cross v. Gimlin, Mo.Sup., 256 S.W.2d 812, 813(3)].

Although defendants insisted that the claimed roadway was not open and was not used, at least for vehicular traffic, when they moved onto the Berry tract in February, 1941, *plaintiff* adduced substantial evidence tending to establish that the road had been used by all who desired to do so from about 1937, when materials for construction of the house on the Miller tract were hauled over this road, until December 9, 1951, when defendants closed one of the "gaps" by driving a post in the middle of the road. And, the fair import of *defendants'* testimony is that the claimed roadway had been used continuously and without objection from the Spring of 1941 to December, 1951, so the record justifies the conclusion that there had been open, visible, continuous and uninterrupted use of the claimed roadway for the prescriptive period of ten years.

■ There can be no doubt but that an easement may be created or acquired by

prescription, when all of the requirements of that doctrine.[1] are met and satisfied. [Restatement of Law of Property, Vol. V, Section 457, p. 2923; Jacobs v. Brewster, 354 Mo. 729, 190 S.W.2d 894, 896(2); Smith v. Santarelli, Mo.App., 207 S.W.2d 543, 545(1)]; but, long-continued use alone will not create a prescriptive right [Pitzman v. Boyce, 111 Mo. 387, 392–393, 19 S.W. 1104, 1105; George v. Crosno, Mo. App., 254 S.W.2d 30, 34(6); Gerstner v. Payne, 160 Mo.App. 289, 142 S.W. 794, 795]. For, the use which will create an easement by prescription is substantially the same in quality and characteristics as the adverse possession which will give title to real estate [Roberts v. Quisenberry, 362 Mo. 404, 242 S.W.2d 26, 29; Sanford v. Kern, 223 Mo. 616, 122 S.W. 1051, 1056(7)], and thus must be not only open, visible, continuous and uninterrupted for the required period but also adverse and under claim of right [Kelsey v. City of Shrewsbury, 335 Mo. 79, 71 S.W.2d 730, 731(1); Horton v. Gentry, 357 Mo. 694, 210 S.W.2d 72, 75(2); Hilgert v. Werner, 346 Mo. 1171, 145 S.W. 2d 359, 361; George v. Crosno, supra, 254 S.W.2d loc. cit. 34–35(6); Riebold v. Smith, Mo.App., 150 S.W.2d 599, 602(3)]. "Mere use of a passage over another's land for a long time with his knowledge, is not necessarily an adverse use" [Anthony v. Kennard Bldg. Co., 188 Mo. 704, 87 S.W. 921, 925]; and, "(i)f permissive in its inception, then such permissive character, being stamped on the use at the outset, will continue of the same nature, and no adverse user can arise until a distinct and positive assertion of a right hostile to the owner, and brought home to him, can transform a subordinate and friendly holding into one of an opposite nature" [Pitzman v. Boyce, 111 Mo. loc. cit. 392, 19 S.W. loc. cit. 1105]. "* * * (M)erely permissive use of land cannot ripen into an easement." Seested v. Applegate, Mo.App., 26 S.W.2d 796, 799(9).[2]

Conceding in her brief "that the various elements of * * * user must be shown by clear and convincing proof," plaintiff leans heavily upon the principle, as stated in Fassold v. Schamburg, 350 Mo. 464, 166 S.W.2d 571, 572(2), that: "'* * * the burden is upon the claimant to show the adverse character of the use; but *in the absence of some showing that the use was permissive in its origin* it is well settled that when one claims an easement by prescription and shows an open, continuous, visible, and uninterrupted use for the period of the 10-year statute of limitation, the burden is cast upon the landowner to show that the use was permissive, rather than adverse, if he claims it to have been so.'" (Emphasis ours.) Although stated occasionally without specific reference to the emphasized qualification[3], examination of the Missouri cases in which the quoted doctrine has been considered reveals that the principle, as stated, frequently has been qualified by some such phrase as "in the absence of some showing that the use was permissive"[4] and usually has been applied where there has been a complete failure of proof that the user was permissive.[5]

1. "The four essential facts for the plaintiffs to prove in order to sustain their claim to an easement by prescription are, first, user for the prescribed period; second, that the user was adverse; third, that it was under a claim of right; fourth, notice to the owner of the user, and of its character and of the claims of right." Roberts v. Quisenberry, 362 Mo. 404, 242 S.W.2d 26, 28(2); Novinger v. Shoop, Mo. Sup., 201 S.W. 64, 67; Anthony v. Kennard Bldg. Co., 188 Mo. 704, 87 S.W. 921, 924.

2. To the same effect, see Anson v. Tietze, 354 Mo. 552, 190 S.W.2d 193, 199; Auxier v. Horn, Mo.Sup., 213 S.W. 100; Freed v. Greathouse, 238 Mo.App. 470, 181 S.W.2d 41, 43(5); 28 C.J.S., Easements, § 14d. (1), p. 655; 17 Am.Jur., Easements, Sec. 67, pp. 978–979.

3. Meryl Realty & Investment Co. v. Schumacher, Mo.Sup., 264 S.W. 368, 369(1); Meyer v. Everett, Mo.App., 235 S.W.2d 130, 136(2).

4. Fassold v. Schamburg, 350 Mo. 464, 166 S.W.2d 571, 572(2); Faulkner v. Hook, 300 Mo. 135, 254 S.W. 48, 50; Gerstner v. Payne, 160 Mo.App. 289, 142 S.W. 794, 795(1).

5. Fassold v. Schamburg, supra, 166 S.W.2d loc. cit. 572; Novinger v. Shoop, supra,

The instant case is *not* one in which there is an "absence of some showing" or a failure of proof that the user was permissive. Frank Raab, one of the three Raab heirs who owned the Berry tract from the death of their father in October, 1928, to the date of conveyance of that tract to defendants in October, 1948, and who during that period had charge of the tract for the heirs, testified for defendants. Raab stated that "a year or two before he (Miller) died" in 1946—"I think * * * a little before" 1945—plaintiff's husband, Marshall Miller, "came to me and told me there had been some heavy hauling over the road (obviously referring, as shown by Raab's subsequent testimony, to *another* north-and-south road parallel with, and just east of, the east boundary line of the Berry tract), and that it was so bad that he couldn't get in and out with his own car and he wanted (to know) if it would be alright with me to go through the field and * * * I told him to go ahead but he would have to close the gates, and I told him it was to be understood that there was to be no road there." Witness Raab did not fix more definitely the date of this conversation with plaintiff's husband; and, since Raab was *positive* that the claimed roadway had not been used by the Millers prior to that conversation, it might have been at an earlier date for, as we have indicated, other evidence tended to establish use of the claimed roadway since about 1937. Mrs. Arve Berry, one of the defendants, testified that "Mrs. Miller said that Frank (Raab) give *him* (Mr. Miller) a right to go through that field," again that "she (plaintiff) said Mr. Raab gave *them* the right," and further that "it was several times along years back that Frank (Raab) gave her (plaintiff) permission to go through the place, but I don't know just what year it was."

Plaintiff's counsel objected, "because of the dead man's statute" (Section 491.010 RSMo 1949, V.A.M.S.), to any testimony by witness Raab concerning his conversation with plaintiff's husband; and, although this question has not been briefed or argued on appeal and we are not asked to rule and do not rule it, there is grave doubt as to the competency of this testimony.[6] And, in view of the further fact that the testimony of defendants and their witnesses was, in certain respects, conflicting and unsatisfactory, we would not be persuaded by their testimony alone and would not rest our conclusion on that basis. However, *defendants'* evidence to the effect that the use of the claimed roadway by plaintiff and her husband had been permissive was confirmed by *plaintiff's* evidence. When first asked whether "you just had permission of the man on the Berry land to go through there," plaintiff replied that "he never said anything to me about doing that." But, when subsequently asked, "Well, he gave you permission to go through there?", plaintiff answered, "No, sir—*he gave my husband the permission*"; and, in response to the next question, "Mr. Rapp (Raab) gave your husband permission to go through this farm?", plaintiff said, "*My husband had the permission.*" Plaintiff's counsel objected to the last quoted question "as hearsay"; and, after conceding in their brief upon appeal that "it is true that she (plaintiff) did testify that Raab gave her husband 'the permission,'" counsel succinctly dispose of this very significant testimony by adding "that testimony was objected to as hearsay and should be disregarded by this court as it was by the trial judge."

■ However, we cannot brush aside this testimony so easily and treat of it so

201 S.W. loc. cit. 67; Smith v. Santarelli, Mo.App., 207 S.W.2d 543, 545(2); Wallach v. Stetina, Mo.App., 28 S.W.2d 389, 391. Cf. Plaza v. Flak, 7 N.J. 215, 81 A.2d 137, 140, 27 A.L.R.2d 324, 330 (7), where it was said that "(t)he burden of proof remains upon the plaintiff to establish the prescription by the preponderance of the evidence."

6. See and compare, Bussen v. Del Commune, 239 Mo.App. 859, 199 S.W.2d 13, 19-20(4, 5, 8, 9); Eaton v. Curtis, 319 Mo. 660, 4 S.W.2d 819, 823(6); Stone v. Wandling, 307 Mo. 160, 270 S.W. 315, 317(4); Edmonds v. Scharff, 279 Mo. 78, 213 S.W. 823, 825(2, 3).

lightly. In the first place, the record does not demonstrate that plaintiff's statement that "my husband had the permission" was hearsay evidence, i. e., that plaintiff thereby was relating what her husband had told her rather than testifying from personal knowledge, which obviously she might have had. See definitions of "hearsay evidence" in Black's Law Dictionary (4th Ed.), p. 852; 1 Bouvier's Law Dict., Rawle's Third Revision, pp. 1429–1430; Cottonseed Delinting Corp. v. Roberts Brothers, Mo.Sup., 218 S.W.2d 592, 594(5). Plaintiff's counsel have suggested no reason why, and no basis on which, we could or should conclude that the wholly unexplained but nevertheless unequivocal assertion by plaintiff, apparently as a fact of which she had personal knowledge, that "my husband had the permission," should be rejected as hearsay.

But, assuming without so finding that plaintiff's quoted statements simply reflected what her husband had told her, this testimony still would not be incompetent. For, statements of a deceased declarant against or in disparagement of his pecuniary or proprietary interest are clearly admissible.[7] It has been held specifically that declarations by a landowner bearing upon whether his use of a way over an adjacent tract has been permissive or adverse are competent [Auxier v. Horn, Mo.Sup., 213 S.W. 100, 103(2); Daw v. Lally, 213 Mass. 578, 100 N.E. 1024], and that statements by one joint tenant may be considered against the other joint tenant also [First Baptist Church & Society of Norwich, N. Y. v. Letson, 144 Misc. 286, 258 N.Y.S. 493, 497 (4)]. We cannot follow the suggestion of her counsel that plaintiff's testimony that "my husband had the permission" be disregarded.

■ Although *permissive* use of the claimed roadway by one person would not foreclose another from acquiring a prescriptive easement by *adverse* use [28 C.J.S., Easements, § 14d. (1), pp. 655–656], it may be noted, as perhaps in further confirmation of defendants' evidence that use of the claimed roadway was permissive in origin and character, that Mrs. Ann Jeffers, plaintiff's sister who with her husband lived on the Berry tract from 1936 to 1941, stated that "Mr. Robb (Raab) gave me and my husband the right to go through there" over the claimed roadway, and that, when asked whether "the only right you had was the permission you received from Mr. Robb (Raab)," Mrs. Jeffers answered, "Yes, sir."

■ Careful consideration of all of the competent evidence bearing upon use of the claimed roadway by plaintiff and her husband impels, we believe, the conclusion that such use was permissive in origin and character; that plaintiff did no more than make "a case of good neighborly conduct to pass over (defendants') land, amounting to a mere license revokable at pleasure" [Anson v. Tietze, 354 Mo. 552, 190 S.W.2d 193, 199; Anthony v. Kennard Bldg. Co., supra, 87 S.W. loc. cit. 926, Auxier v. Horn, supra, 213 S.W. loc. cit. 103–104]; and that, prior to obstruction of the claimed roadway, there had been no "distinct and positive assertion of a right hostile to the owner, and brought home to him, (to) transform a subordinate and friendly holding into one of an opposite nature" (Pitzman v. Boyce, 111 Mo. loc. cit. 392, 19 S.W. loc. cit. 1105).

■ In reaching this conclusion, we also have in mind that, although each case must be determined on its own facts, the tendency is to restrict the right of one to acquire a prescriptive easement over the land of another (28 C.J.S., Easements, § 18, pp. 663–664; Zinser v. Lucks, 361 Mo. 671, 235 S.W.2d 844, 848); that there is au-

7. Stoff v. Schuetze, 293 Mo. 635, 240 S.W. 139, 144(2); Coshow v. Otey, Mo.Sup., 222 S.W. 804, 805–807(1); Boynton v. Miller, 144 Mo. 681, 46 S.W. 754, 755 (2); Meier v. Meier, 105 Mo. 411, 430–431, 16 S.W. 223, 228; Anderson v. McPike, 86 Mo. 293, 299(4); Cape County Sav. Bank v. Wilson, 225 Mo.App. 14, 34 S.W.2d 981, 985(7); Wigmore on Evidence (3rd Ed.), Vol. 5, Sections 1458 and 1459(1), pp. 263–265; Id., Vol. 6, Section 1778, pp. 205–211; 31 C.J.S., Evidence, § 219c., pp. 963–964; 20 Am. Jur., Evidence, Section 581, pp. 488–490.

thority for the proposition that, in case of doubt or uncertainty as to the character of the use, it will be presumed to have been permissive [39 C.J.S., Highways, § 23, p. 942; Anson v. Tietze, supra, 190 S.W.2d loc. cit. 199(13)]; and, that doubts arising as to intention of the parties must be resolved in favor of the free and untrammeled use of the land [Marshall v. Callahan, supra, 229 S.W.2d loc. cit. 734(4); Gardner v. Maffitt, 335 Mo. 959, 74 S.W.2d 604, 607(5), 95 A.L.R. 452].

Since plaintiff's case was submitted *solely* on the theory that she had an easement by prescription and *not* on the theory that the claimed roadway was a way of necessity, the evidence offered by both parties upon the question as to whether or not there is a north-and-south road running parallel with, and just east of, the east boundary line of the Berry tract, which might afford ingress to and egress from the Miller tract, is not germane to the issue upon appeal. Necessity is not the basis for establishing a prescriptive easement (Roberts v. Quisenberry, supra, 242 S.W.2d loc. cit. 28); and, "mere convenience or a shorter route is not sufficient to create or convey a right or easement, or impose burdens on land other than those granted * * *." [Marshall v. Callahan, supra, 229 S.W.2d loc. cit. 734(6)]. See also George v. Crosno, supra, 254 S.W.2d loc. cit. 34(4).

Having concluded that the use of the claimed roadway by plaintiff and her husband was permissive rather than adverse and that, therefore, such use did not ripen into a prescriptive easement, it follows that the permanent injunction should not have been granted and that the cause must be reversed and remanded with directions to dismiss plaintiff's bill for want of equity.

McDOWELL, P. J., and BLAIR, J., concurs.