McGRATH, Appellant, v. CITY OF NEVADA et al.

Division One, March 30, 1905.

1. **STREET: Dedication: Limitations.** Where the owner of land has done an act which clearly indicated his intention to dedicate the land to the city for a street, and the city, in response, has done an act which clearly indicated its purpose to accept the dedication and takes possession and makes use of the land for a street, the concurring acts of the owner and of the city constitute a complete common law dedication. In such case it is not necessary to show user extending over any given period of time, but it is sufficient to show it for such length of time as to clearly show the intention of the parties. In such case the Statute of Limitations has nothing to do with the city's title to the street; its title is by common law dedication.

2. ———: ———: ———: **Mortgage to County.** In 1869 Blake borrowed school money and gave a mortgage to the county on the land in controversy, but whether the strips of ground now sued for were then marked off as a part of a street is not shown, the witnesses only testifying that they never knew when the street was not there. In 1879, the county foreclosed the mortgage, and in 1883 sold it to Logan, who took possession immediately,

and began at once to improve the place, and in doing so, so built his fence as to throw the strips of land in suit into the street, and did so intending for them to be a part of the street, and built a sidewalk along his fence on the outside, and induced the city to do necessary work to improve the street at that point. Later in the same year he mortgaged the property to the county, the mortgage ignoring the street, and in 1893 the mortgage was foreclosed and the land bought by the county, which sold it in 1896 to the plaintiff. *Held,* that the act of Logan in setting his fence as he did and in inviting the city to work and use the street was an act of dedication, and the act of the city in improving and using the street was an act of acceptance of the dedication, and the dedication became complete before the county took the mortgage from Logan. *Held,* also, that, the dedication being complete, the Statute of Limitations had nothing to do with the case, and whether the statute ran while the county as mortgagee and owner held the title, is not decided, for the city's title does not depend on adverse possession.

3. ———: **Limitations: Notice.** When the dedication to the city was complete, the Statute of Limitations began to run against the owner, and hence also against the county to which the owner subsequently mortgaged it, and as the county, and the purchaser from it after foreclosure, took the title with full knowledge of the prior dedication, neither the county nor the purchaser could claim it as against the city, even though the Statute of Limitations was the only basis of the city's title.

Appeal from Vernon Circuit Court.—*Hon. H. C. Timmonds,* Judge.

AFFIRMED.

*M. T. January* for appellant.

(1) The Statute of Limitations will not run in favor of parties occupying land appropriated to public use. R. S. 1889, sec. 4270; Brown v. Carthage, 128 Mo. 10; St. Louis v. Railroad, 114 Mo. 13; Railroad v. Totman, 149 Mo. 657; Hendrickson v. Grable, 157 Mo. 48; Railroad v. Baker, 82 S. W. 85. (2) Land bought by the county on foreclosure of a school fund mortgage becomes school property and is appropriated to a public use. R. S. 1899, sec. 9837; School Directors v. Goerges, 50 Mo. 194; Dice v. Hamilton, 178 Mo. 81. (3) Dedica-

tion of land for a street when the land is encumbered with a school fund mortgage would be cut out by a foreclosure of the mortgage. (4) The Statute of Limitations will not begin to run against the holder of a mortgage until the mortgage falls due.

*A. J. King* and *J. B. Johnson* for respondents.

(1) Streets in a city are distinguished from public roads and highways in a township or county. 27 Am. and Eng. Ency. Law (2 Ed.), 102 . (2) Dedication of land for a street at common law, or right acquired by prescription, is an easement that in no way interferes with the fee. Carlin v. Paul, 11 Mo. 622; Rutherford v. Taylor, 38 Mo. 319; Campbell v. Kansas City, 102 Mo. 326; 9 Am. and Eng. Ency. Law, 73. (3) In case of dedication, ten years' user is not necessary, and it is only necessary to show acceptance, and user even for a short time can be shown as evidence of that fact. Hitz v. St. Louis, 110 Mo. 618; State v. Proctor, 90 Mo. 334. (4) The period of prescription in this State is ten years. State v. Walters, 69 Mo. 463; State v. Bradley, 31 Mo. App. 318. (5) After long lapse of time it will be presumed from notorious and uninterrupted use by the public that the owner knew and acquiesced in such use, and if used for a period of ten years a conclusive presumption of dedication arises. Rex v. Barr, 4 Campb. 16; 9 Am. and Eng. Ency. Law (2 Ed.), 66. (6) Defendant city can take possession of land for street purposes only by ordinance. Downend v. Kansas City, 156 Mo. 60; Carls v. DeSoto, 156 Mo. 443; Hunter v. Weston, 111 Mo. 176; Moore v. Cape Girardeau, 103 Mo. 470; Ely v. St. Louis, 81 S. W. 168. (7) A statutory dedication for a street carries the fee. R. S. 1899, sec. 8959. (8) Adverse use and expenditure of money or labor carries the fee under the road law. R. S. 1899, sec. 9472. Under the statute the county has

full control and management of land bought in by it under a school mortgage. R. S. 1899, sec. 9837.

VALLIANT, J.—Plaintiff sues in ejectment for the possession of two strips of land which are embraced in two of the city's streets; one of the strips is fifteen feet wide, the other twenty-nine or thirty feet wide, and have been in use as parts of the streets for twenty years or more.

The evidence shows that in 1869 Elizabeth Blake was the owner of the land of which these two strips were formally a part. In June, 1869, Mrs. Blake borrowed some school fund money from the county and gave a mortgage on the land to secure it. The mortgage was foreclosed in 1879 and bought in by the county of Vernon and held by it until 1883, when it sold the land to Logan, who gave back a mortgage to the county for part of the purchase-money and some money also loaned him out of the school funds. This mortgage was dated October 4, 1883; this mortgage was also foreclosed, and the land again bought in by the county, December 19, 1893. The county held the land until September 9, 1896, when it contracted to sell it to the plaintiff McGrath, who took possession at that time, and his title was afterwards completed by a deed from the county dated January 8, 1901. The street on the east of the property embraces a strip fifteen feet wide of the land called for in the deed above mentioned, and the street on the south embraces a strip twenty-nine or thirty feet wide of the same land. Those two strips are the land in suit.

When Logan bought the land there was a small house on it, and remnants of an old fence consisting of posts and a few boards along the east line indicating where a fence had been, marking off the fifteen-foot strip into the street. Logan built a new fence along that line, and a sidewalk on the outside, and built a fence on the south line marking off the twenty-nine or

thirty-foot strip into the street on that side. That was in the spring of 1883, and those two strips have continued to be a part of those two streets ever since. In the following October Logan gave the mortgage to the county for the school money.

Although the evidence did not show how long before Logan took possession of the property those two strips had been a part of those two streets, that is, when they were first marked off by the fences, yet it did show that they were embraced in the streets long before Logan went into possession and for more than twenty years before this suit was begun. Logan testified that he set his fences as he did to mark off the streets, and that he induced the city to have it worked as a part of the streets.

The cause was tried by the court, jury waived, and the finding and judgment were for the defendant. The plaintiff appeals.

The only point relied on by appellant is that while the land was held by the county as mortgagee or owner in trust for the public schools, the Statute of Limitations did not run in favor of the city.

Section 4270, Revised Statutes 1899, is: "Nothing contained in any statute of limitation shall extend to any lands given, granted, sequestered or appropriated to any public, pious or charitable use, or to any lands belonging to this State."

Section 9837 provides that on a foreclosure of the statutory mortgage given to the county to secure the payment of school moneys borrowed, the county court may cause the land to be bought in and held by it in trust for the public schools of the township. Land thus bought in and held by the county would be deemed as devoted to a public use, and therefore while the title is so held by the county the Statute of Limitations would not run in favor of one entering into possession adverse to that interest. Whether land that is simply mortgaged to secure borrowed school money can be said

for that reason only to be devoted or appropriated to a public use is not so clear, but it is not necessary to decide that question in this case. The city's right to an easement in this land for street purposes does not depend on prescription or the Statute of Limitations, although long and continued user is material evidence in support of the city's title.

When the only title a city can show to land in a street is by prescription or adverse user, it is necessary to show such user for a period as long as that which the Statute of Limitations prescribes to create title in land by adverse possession.

But when it is shown that the owner of the land has done an act which clearly indicated his intention to dedicate the land to the city for a street, and the city in response has done an act which clearly indicated its purpose to accept the dedication and takes possession and makes use of the land for a street, the concurring acts of the owner and the city constitute a complete common law dedication, and in such case it is not necessary to show user extending over any given period of time, but it is sufficient to show it for such length of time as to clearly show the intention of the parties. In such case the Statute of Limitations has nothing to do with the title; it is a title by common law dedication. [Elliott on Roads and Streets (2 Ed.), secs 121-2-3; Heitz v. St. Louis, 110 Mo. 618; Bauman v. Boeckeler, 119 Mo. 189; K. C. Milling Co. v. Riley, 133 Mo. 574.]

The evidence in this case shows that these two streets embracing these two strips of land existed in the shape they now are during the time of Mrs. Blake's occupancy and ownership. The date of the beginning of the use as streets is not shown; the witnesses could only say that they never knew when the streets were not there, but their memories would only justify them in saying that they were there more than twenty years. In June, 1869, Mrs. Blake borrowed school money and gave a mortgage to the county to secure it; whether

these two strips had been marked off as parts of the streets before that date the evidence does not show. The county foreclosed its mortgage in 1879, bought in the land and held it until the spring of 1883, and then sold it to Logan. When Logan took possession he immediately began to improve the place, and in doing so built his fences so as to throw these two strips into the streets; he testified that he did so intending the strips to be a part of the streets, built a sidewalk on the east outside of his fence and induced the city to do necessary work to improve the street at that point. The city did do such work, and from that time on the land has been used as a public street. After those acts were done Logan in October, 1883, gave the county a mortgage for $1,200, which included $300 balance of purchase-money due, and $900 borrowed money. The act of Logan in setting his fences as he did and inviting the city to work and use the streets was an act of dedication, and the act of the city in improving and using the streets was an act of acceptance and the dedication became complete.

Under this view of the evidence the dedication was complete before the county took the mortgage from Logan, and, therefore, if the application of the Statute of Limitations is a question in the case, the statute began to run against Logan before he gave the mortgage, and when once started it did not stop by the subsequent mortgage, but ran on, not only against Logan, but against every one who came in under him. When the county took the mortgage the streets were there as conspicuous physical facts, and the county was chargeable with notice of them.

Therefore, if the city depended on the Statute of Limitation for its title and if it be conceded that the Statute of Limitations could not have been started to run against the county after it took the mortgage, it would not follow that it would not continue to run

when it had already started before the mortgage was given.

The county has dealt with this property all through the history of it, as shown by the evidence, in plain view of the streets and necessarily in tacit recognition of their character as public thoroughfares. The plaintiff in this case has also purchased with his eyes wide open. The streets were there when the county foreclosed the Blake mortgage, and while it held the property before selling it to Logan, and it sold it to him with full knowledge of the condition, and so on to the foreclosure of the Logan mortgage and the sale to the plaintiff. Even if the Statute of Limitations was the city's only title, the county could not under these circumstances claim the land; neither can the plaintiff who bought the land in full view of the streets and occupied it several years before he discovered what he thought was a flaw in the city's title on the theory that while the county held it, it was beyond the reach of the Statute of Limitations. But, as we have seen, besides its long user of more than twenty years, the city has title by a common law dedication.

The judgment is affirmed.

All concur except *Brace, P. J.,* absent.