Charles N. TERRY and Clara L. Terry,
Plaintiffs-Appellants,

v.

CITY OF INDEPENDENCE, Missouri, a Municipal Corporation, Defendant-Respondent.

No. 51038.

Supreme Court of Missouri,

Division No. 2.

April 12, 1965.

Wm. Fred Burns, Independence, for plaintiff-appellants.

S. Ralph Stone, City Counselor, Thomas D. Cochran, Asst. City Counselor, Independence, for defendant-respondent.

BARRETT, Commissioner.

This is an action in two counts, one for a permanent injunction, and two to quiet the title to a strip of ground, 60 feet by 50 feet, which the plaintiffs-appellants allege the city has appropriated as a public street across the corner of a lot, 105 feet by 165.4 feet, now owned by them. Upon oral motion at the close of the plaintiffs' case the court, being of the opinion that there was not "any case here for these plaintiffs," dismissed the action and the plaintiffs appealed. The Kansas City Court of Appeals was of the opinion that the case involved the title to real estate within the meaning of the constitution (Art. 5, Sec. 3, V.A.M.S.) and accordingly transferred the cause to this court.

■ The respondent city has moved to dismiss the appeal for the stated reason that the appellants' brief does not contain "a fair and concise statement of the facts." Sup.Ct. Rules 83.05; 83.09, V.A.M.R. This motion is without substantial merit and is therefore overruled. This was a court-tried case and as of course is reviewable "upon both the law and the evidence as in suits of an equitable nature" and the judgment is not to be "set aside unless clearly erroneous." Sup.Ct. Rule 73.01(d); Curd

v. Reaban, Mo., 232 S.W.2d 389 (an adverse possession case). More particularly, since the court in effect decided the cause at the close of the plaintiffs' evidence the problem is whether upon the record before the court "the strip of land in controversy is part of an established road (by prescription) for the use of the public and is now being so used by the public." Gilleland v. Rutt, Mo.App., 63 S.W.2d 199, 201; Eatherton v. Henderson, Mo., 59 S.W.2d 623. While these latter cases were decided prior to the enactment of the noted rules and prior to the adoption of the Civil Code of Missouri, in 1943, they were adverse possession cases and in the Gilleland case the trial court sustained a demurrer at the close of all the evidence and entered judgment for the defendant.

■ It should be noted in passing that this case is not concerned with dedication although the terms dedication, prescription and adverse possession are often used interchangeably. State v. Thompson, 91 Mo. App. 329, Annotation 76 A.L.R.2d 535, 536. And McGrath v. City of Nevada, 188 Mo. 102, 86 S.W. 236, City of Hardin v. Ferguson, 271 Mo. 410, 196 S.W. 746, Heitz v. City of St. Louis, 110 Mo. 618, 19 S.W. 735, are all strictly speaking dedication cases. As stated, the sole question for determination is whether the City of Independence acquired an easement to this particular strip of ground by adverse possession. And while the general rules as set forth in what has come to be one of the leading cases (State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174) are applicable it is not necessary by reason of their sheer number to cite cases other than those involving cities and other public bodies. As a matter of fact there is no difference of opinion between the appellants and the respondent on this subject, as a part of the general rules it has become a principle that a municipality or other public body may acquire a street or road over the land of another by adverse possession after the statutory period of limitation, here ten years, RSMo 1959, § 516.010. Gilleland v. Rutt, supra. In addi-

tion to the cases cited in the course of this opinion, the rules relating to municipalities and adverse possession are set forth in one form or another in these texts,—39 C.J.S. Highways §§ 3–24, pp. 921–945; 25 Am.Jur. (Highways), Secs. 11–16, pp. 346–349; 3 Am.Jur.2d (Adverse Possession), Sec. 139, p. 225.

As with the applicable rules of law there is also no dispute as to the facts. In June 1947 a tract of forty acres was platted as Hocker Homestead consisting of 45 lots. On the south the subdivision is bound by Pacific Avenue and on the west by Hocker Street. Pacific Avenue dead-ends at Hocker Street and thus at the juncture of these two platted streets the corner is a right angle. Both streets are platted as 50 feet wide. Lot 11 is the southwest corner lot, fronting 105 feet on Pacific and 270.4 on Hocker and the strip of ground now in dispute and claimed as a street by the city is across the south end of this lot. Lot 12 to the east adjoins Lot 11 and the plaintiffs, Mr. and Mrs. Terry, "moved into" and it is assumed have owned Lot 12 since the platting of the addition. Furthermore, across and on the south side of Pacific Avenue the Terrys owned a larger lot, 297 by 146.66 feet, and Hocker Street dead-ends at this lot and there joins Pacific Avenue. It does not appear who after the platting of the addition owned corner Lot 11. And it does not appear whether there are any improvements on the south 165 feet of the lot, the rather plain inference from the record is that there are none. Furthermore, while Lot 11 was platted as 270.4 feet in length, in some manner not revealed the north 105 feet have become detached and the lot is now 165.4 feet long and 105 feet wide. In the trustee's deed and the quitclaim deed to the Terrys the descriptions are "All of Lot Eleven (11) (except the North 105 feet) HOCKER HOMESTEAD, an Addition in and to the City of Independence." On August 1, 1958, by virtue of a "Trustee's Deed Under Sale" (probably from the land trust for taxes) and for a recited consideration of $100 the Terrys

became the purchasers of Lot 11, except the north 105 feet. And recorded on November 15, 1958, was a quitclaim deed from Charles and Edna Hubbard to the Terrys for "One Dollar and Other Valuable Considerations." After thus acquiring title to the south 165.4 feet of Lot 11 in 1958 the Terrys instituted this suit against the city in 1961.

The Terrys have lived at 508 Pacific Avenue next door to Lot 11 since 1947, they had lived there eleven years when they purchased the lot in 1958. They have paid special assessments and back taxes on the lot up to and including 1961 (they had statements for the 1962 and 1963 taxes but had not paid them when the case was tried in November 1963.) Mr. Terry said that when he purchased the property in 1958 he did not know where the corner "peg" was until he had it surveyed in 1959. And the surveyor, incidentally, was the engineer who had platted the subdivision in 1947. As to the city's possession and use of the strip of ground involved here Mr. Terry said that the city and the traveling public had used the south part of the lot as a city street continuously since 1947, "That street was a curve. The first time I ever saw it it went across the corner of that lot, so I was told." He only claimed that the area of use changed over the years, "It edged over a few inches every year, because the cars got on there all the time, and when they graded they graded to where the traffic had went to." He said that at one time the street even took 25 feet off of Lot 12 and encroached further on Lot 11 than it does now but after the survey he piled dirt up "regaining some more property," possibly 15 to 18 feet. Incidentally, no part of Lot 12 is involved in this action. Then in 1961 Mr. Terry and various city officials were engaged in a controversy, he built a fence along what he said was "my property line," the officials threatened to have him arrested if he didn't take the fence down and "(t)he city had it blocked for about ten days during the oiling period when we were more or less arguing back and forth." Mr. Terry is in the construction business and he uses

his lot on the south side of Pacific Avenue as a storage place for his equipment and in addition he stores his heavy machinery on that part of the platted area designated as the fifty foot strip for Pacific Avenue: "Q. You use this portion which is marked on the plat as Pacific Avenue—do you use that area to store your goods in? A. Yes, sir; I use that to keep the cars from hanging around there. The City didn't claim it and I wanted to keep down the traffic so they couldn't have a race track all the time. Q. That portion that is designated as Pacific Street, you use that portion all the time? A. Yes, sir, I do. Q. And you have been using it for how long? A. I believe 1954, when I bought the lot on the south side."

Specifically on cross-examination Mr. Terry gave this evidence as to the city's use and occupancy of the strip of ground involved here:

"Q. Mr. Terry, you have lived next door to Lot 11 or owned the property just to the east, which is Lot 12, since 1947?

"A. Yes, sir; that's right.

"Q. You purchased this Lot 11, the subject of this particular lawsuit, in 1958?

"A. Yes, sir.

"Q. So you lived there a period of some eleven years before you purchased Lot 11?

"A. Yes, sir; that is correct.

"Q. At the time you lived on Lot 12 next door to this lot you were aware, were you not, that a portion of Lot 11 was being used for this street?

"A. Yes, sir.

"Q. You had known this all the time you had been living there from 1947 to 1958?

"A. I can't say I knowed for sure because I didn't know where the peg

was. I had been told it went across Lot 11; I hadn't had it surveyed.

"Q. It was your judgment that was the case?

"A. Yes, sir; I thought it was and I had been told that.

"Q. That was true all of these eleven years before you purchased this property?

"A. Yes, sir; as far as I know.

"Q. Never to your knowledge from 1947 up to the present time has the road ever come down there and made what we would call a square right turn?

"A. No, it never has.

"THE COURT: It has always been on a curve?

"THE WITNESS: Yes.

"Q. And the curve took in a portion of Lot 11?

"A. As far as I know it always has.

"Q. Your testimony is that as long as you have been in that area a portion of Lot 11 has been used as the street?

"A. A portion of it has, yes.

"Q. You had this knowledge in 1958 when you purchased this property?

"A. Yes, sir; I was told it went across the corner of it."

*   *   *   *   *   *

"Q. Since you have been out there, since 1947, the City of Independence has been oiling this particular road?

"A. Yes, sir.

"Q. They haven't missed a year since then to your knowledge?

"A. Yes, sir; they missed this year, the first one.

"Q. At the time you were living next door, from '47 to '58, did they oil that road as a curved or square corner?

"A. As far as I know it has always been used and oiled as a curve."

On cross-examination Mrs. Terry said:

"Q. There has always been a curve there at that corner, hasn't there?

"A. Yes.

"Q. It was that way when you lived next door in 1947?

"A. Correct.

"Q. And it has a curve now?

"A. Yes.

"Q. And it has always curved?

"A. That's right.

"Q. This road has always been oiled and maintained since you have been out there, since 1947, by the City of Independence?

"A. As far as I can remember.

"Q. And they have maintained it on a curve all this time?

"A. Yes."

▮ This testimony by Mr. and Mrs. Terry shows an occupancy and user of the described strip of ground across Lot 11 by the traveling public and the city for more than the statutory period of ten years (RSMo 1959, § 516.010) and by reason thereof an easement or a city street by adverse possession. City of Kirksville v. Young, Mo., 252 S.W.2d 286; California Special Road Dist. v. Bueker, Mo.App., 256 S.W. 98. There is no evidence that the initial use and occupancy by the traveling public and the city was permissive and whether the use and occupancy was prescriptive in character only or permissive only is a fact to be inferred from the circumstances. The quality and character of the use were not of the same type and character that individuals might normally make

of land, as for a garden plot or a part of a yard, but it was the character of dominion and use normally exercised and made of property for a street. La Grange Reorganized School Dist. No. R–VI v. Smith, Mo., 312 S.W.2d 135. "The evidence disclosed that the whole passageway had been consistently used by the public for alley purposes for as much as fifty years after the erection of buildings along either side of it, and that the character of the use which had been made of it was in all substantial respects the same as that made of all other alleys in the city." City of Caruthersville v. Cantrell, Mo.App., 230 S.W. 2d 160, 165. The mere taking possession of the land of another or its mere occupancy for a period of years are not alone adverse necessarily in the sense required to create a prescriptive right. La Grange Reorganized School Dist. No. R–VI v. Smith, Mo., 312 S.W.2d 1 c. 138. But not only was the strip of land involved here used by the traveling public as a street for more than ten years, the city took possession of the traveled area, expended public funds in its upkeep, graded it, oiled it and exercised dominion over it. "These facts are sufficient to show that the roadway in question is one for public use by dedication and by the acceptance and use of the public, or one by prescription from use for a long period of time by the public acquiesced in by the owners, or one by limitation from adverse user on the part of the public; in either event for such period of time that plaintiff and his grantors are now estopped to deny its character as a public road." Gilleland v. Rutt, 63 S.W.2d 1. c. 201; Anson v. Tietze, 354 Mo. 552, 557, 190 S.W.2d 193, 195.

▮ The assessment by the city of taxes on the entire lot and their payment by the appellants is a circumstance to be considered but the fact alone is not sufficient to overcome other indisputable circumstances establishing adverse possession in the city. City of Caruthersville v. Cantrell, 230 S.W.2d 1. c. 166; Conran v. Girvin, Mo., 341 S.W.2d 75, 91. This case

and its circumstances are governed by the cited cases and are to be distinguished from the cases in which there was no evidence of public use for the prescriptive period or no proof of public improvements by the public body or no proof of the expenditure of public funds as was the fact in Sellers v. Swehla, 364 Mo. 285, 261 S.W.2d 26. Also the circumstances are to be distinguished from those in which "(n)o overt act was ever committed by any individual, the public generally, or the city, which could be construed as a claim of any right adverse to the owner." Kelsey v. City of Shrewsbury, 335 Mo. 78, 81, 71 S.W.2d 730, 731; Brinck v. Collier, 56 Mo. 160. In short this case and its circumstances are to be contrasted with those instances in which the city's use and possession "was illusive, it was not of right and it was not of such character and quality or in such force of circumstances as to compel the inference that it was not in subordination to the rights of the record owners." Szombathy v. City of Berkeley, Mo., 280 S.W.2d 834, 837.

As a matter of fact the sufficiency of the evidence to support the city's claim of a street by adverse possession, in its conventional sense, is not the appellants' principal contention. Their claim is based almost entirely on the statutes relating to plats, principally Sec. 445.030 which insofar as material here provides that a plat "shall not be placed of record until it shall have been submitted to and approved by the common council of such city * * * by ordinance, duly passed and approved by the mayor * * * and before approving such plat, the common council may, in its discretion, require such changes or alterations thereon as may be found necessary to make such map or plat conform to any zoning or street development plan which may have been adopted or appear desirable * * *." The appellants' pleading and proof in the trial court and their brief and argument in this court are all directed to the proposition that the city, as provided by the quoted statute, approved the plat of

the addition in 1947 and, therefore, it is argued that its use of the area in question was "permissive in character." It is said that "(t)he character of the use of the curve was then fixed by approving the plat" and was not changed until 1959 after the appellants had the lot surveyed and first challenged the city's exercise of dominion over the disputed area.

But statutory dedication is not the only method by which a city may acquire an easement for a street, as stated in Gilleland v. Rutt, 63 S.W.2d 1. c. 201, "(i)t has long been settled law in Missouri that the public may acquire the right to the use of a road or easement over the land of another, when such road has been established by condemnation, by dedication to public use by some unequivocal act, or from long use of the road as such by the public acquiesced in by the owner, and by adverse occupancy and use of the same by the public for a period of time equal to that prescribed by the statute of limitations (RSMo 1959, § 516.010) for the purpose of bringing an action of ejectment." There is no issue in this case either by pleading or proof as to the fifty feet designated by the plat as a city street. This case and its record are concerned with a strip of land adjacent to and in addition to the dedicated street and the problem is whether the city has by adverse possession acquired a street in that area. The mere fact of the plat and its dedication of fifty feet to Pacific Avenue as a street does not preclude the acquisition of additional and adjacent land by adverse possession. "An adverse user by the public, by mistake or otherwise, for the requisite period of time, of lands outside of the lines of an established highway is generally held to create a prescriptive right to use such lands as a highway * *." 39 C.J.S. Highways § 12, p. 932.

The difficulty with the cases upon which the appellants rely in support of their position is that those cases are all concerned with the dedicated area, not adjacent or additional land. For example, in City of

Laddonia v. Day, 265 Mo. 383, 178 S.W. 741, the contest in ejectment was to a strip of ground alleged to be a dedicated street. The difficulty arose from the fact of an error, "no definite starting point is given in the description of the addition," and so when Day purchased Block 4 he also claimed the adjacent area "as a part of his block, and the city claims it as a part of said Western avenue," as shown of course on the recorded plat. There were several problems but as to these claims the court said, "Both parties acquired their respective interests in this strip of ground, as well as all of their interest they had in the land embraced within said addition, either directly from Mr. Smith or through mesne conveyances from him, and in pursuance to and in conformity to the plat thereof, as expressly stated in their muniments of title, as previously shown. This alone should and does effectually and permanently estop and debar defendant from claiming any interest whatever in the land in controversy." And likewise, more recently, in City of Marshfield v. Haggard, Mo.App., 304 S.W.2d 672, the case involved "a boundary line dispute." The contest was over a part of a street, both parties relying on platted surveys. The facts were quite complex but as far as material here and for the purpose of illustration the court said, "In other words, both took under the plat. The acceptance of these interests 'estops' them from questioning the relative locations as they were platted, and they cannot dispute the description and location of their property in reference to each other as platted and laid out." City of Pacific v. Ryan, 325 Mo. 373, 28 S.W.2d 652, was a suit in ejectment by the city to recover possession of an alley. The trial court found for the defendant but in reversing the judgment this court said, "(t)he burden was upon the defendant to make out his claim of title by adverse possession * * * and he wholly failed to establish his title by adverse possession." Guitar v. St. Clair, 238 Mo. 617, 142 S.W. 291, was a suit between individual property owners, both claiming under plats, in which the plaintiff sought to require the defendant to remove a fence which "the plaintiffs say, intrudes into a public street on which their property abuts, and in which they are especially interested. Defendant contends that the fence is on his own property, not in the street." But again by reason of "a mistake of 20 feet in the measurement of her land" one of the parties had never owned "the 20-foot strip marked on her plat as dedicated." The court pointed out that "(t)he land inclosed with defendant's fence has never been used as a street; there are several forest trees on it; the city has never undertaken to improve the street in dispute; the only improvement of it was made by General Guitar."

Neither the latter case nor any of the cases relied on by the appellants have anything to do with adverse possession, and they do not say that in addition to or separate and apart from a platted or dedicated street or other area a municipality may not also acquire a street by adverse possession,—providing of course, as here, the record as made by the appellants in presenting their cases establishes the fact. "In order to create a prescriptive highway right to lands outside the lines of an established highway, the user must be adverse and under claim of right, and not merely permissive." 39 C.J.S. Highways § 12, p. 932. As demonstrated this record meets all the requirements of a street by adverse possession and in its essence is governed by Gilleland v. Rutt, supra; City of Caruthersville v. Cantrell, supra; La Grange Reorganized School Dist. No. R-VI v. Smith, supra, and annotation 76 A.L.R.2d 535.

While as indicated the city has established its claim and title to a street by adverse possession, the judgment must be reversed and the cause remanded. As noted, the court simply entered a judgment dismissing the plaintiffs' petition, there was no specific adjudication of title as the parties prayed. And in the argument section of its brief the city concedes that

there is no "legal description of that portion of the roadway that is on Lot 11." Therefore, the judgment is reversed and the cause remanded for such further proceedings as the parties deem advisable to precisely delimit the area of the street and finally to secure the entry of a judgment adjudicating and quieting the title, subject of course to the views expressed in this opinion.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.